UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,       CASE NO.: 23-cr-20426-BECERRA

      Plaintiff,

v.

ANDRES PEREYRA,

      Defendant.

_____/

**DEFENDANT, ANDRES PEREYRA'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT, REQUEST FOR DOWNWARD DEPARTURE OR VARIANCE AND SENTENCING MEMORANDUM**

The Defendant, **ANDRES PEREYRA**, by and through his undersigned counsel, and pursuant to *U.S.S.G. §6A1.2-3*, *Rule 32 (d), (e)(2)* and *(f)*, *Fed. R. Crim. P.,* and *18 U.S.C. § 3553(a),* respectfully files his objections to the Presentence Investigation Report (hereinafter "PSR"), request for downward departure or variance and Sentencing Memorandum. In support thereof, Defendant states as follows:

## I.    **DEFENDANT'S OBJECTIONS TO THE PSR**

**A.    FACTUAL OBJECTIONS:** Mr. Pereyra objects to paragraph 51 of the PSR in that while he has been technically unemployed since he has been incarcerated, he has been working as a volunteer orderly at FDC-Miami for the last nine (9) months. As this Court is aware, pre-trial detainees are not required to work at any detention facility while awaiting trial or sentencing. Mr. Pereyra's decision to volunteer to work and working as an orderly for the last 9 months, when not being required to is a strong indication that he has begun the rehabilitation process.

1

**B.     GUIDELINES CALCULATIONS**

The Defendant objects to Paragraphs 11, 14, 16, 18, 21, 23, 27, 60 and 70 of the PSR, and in support thereof states as follows:

**(i)     <u>OBJECTION TO PSR PARAGRAPH 11: ROLE ASSESSMENT/FAILURE TO PROVIDE ADJUSTMENT FOR MINOR ROLE PURSUANT TO *U.S.S.G.* § 3B1.2.</u>**

The Defendant objects to PSR paragraph 11, insofar as it states that "Neither an aggravating nor a mitigating role adjustment is recommended for De La Cruz, Murillo nor **Pereyra**." (Emphasis Added). Here, based on Defendant Pereyra's limited conduct meeting the Application Note 3 (C) factors in *U.S.S. G. § 3B1.2*, a minor role adjustment is warranted. *(See PSR paragraphs 5-10).*

Pursuant to *U.S.S.G. §3B1.2*, a defendant is entitled to a two-level reduction adjustment if, based upon his/her role in the offense, they were a "minor participant."  A mitigating role reduction "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of a particular case." *U.S.S.G. § 3B1.2, Application Note 3(C) (Nov. 2023).*

Here, the Defendant's actual conduct is such that he should receive a two-level reduction adjustment under *§3B1.2*. <u>See</u> <u>United States v. DeVaron</u>, *175 F.3d 930, 939-40 (11th Cir. 2001)* ("[T]he district court must measure the defendant's role against the relevant conduct for which she has been held accountable"); <u>See also</u> <u>United States v. Cardenas</u>, *654 Fed. Appx. 982, 983 (11th Cir. 2016)* ("The district court's determination of the defendant's role in the offense should be informed by two principles…first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] roles as compared to that of other

2

participants in [his] relevant conduct"). The Defendant was one of three individuals aboard a self-propelled go-fast vessel (GFV), that was interdicted by the U.S. Coast Guard ("USCG") on October 23rd, 2023.  Additionally, the Defendant did not recruit, or even know, any of the co-defendants prior to boarding the GFV. In fact, the Defendant was recruited by others to serve as a simple crewmember for the GFV and was offered pay for that task.

The sentencing guidelines provide a "range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." *U.S.S.G. § 3B1.2, comment. (n.3(A))*. A two-level reduction for a minor role is warranted for a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." *United States v. Lormil,* 551 Fed. Appx. 542, 544 (11th Cir. 2014). As such, Mr. Pereyra should receive a two-level reduction pursuant to *§3B1.2*. <u>*See*</u> U.*S.S.G. § 3B1.2*, *App. N. 3 (Nov. 2023)* ("a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this (mitigating role) guideline"). Since at least 2002, the Eleventh Circuit has held that "A defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline." *United States v. Boyd, 291 F.3d 1274 (11th Cir. 2002)*. Furthermore, in 2015, Application Note 3 (C), supra, was added to U.S.S.G. *§ 3B1.2* thereby providing the district judges with the factors that they should consider in determining whether someone qualifies as a minor or minimal participant.

Application Note 3(C) in U.S.S.G. §3B1.2 states:

Fact-Based Determination.- The determination whether to apply subsection (a) or subsection (b), or an alternative adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

*U.S.S.G. §3B1.2, Application Note 3 (emphasis added).*

*Application Note 5 in U.S.S.G. §3B1.2* states:

5. Minor Participant-Subsection (b) applies to a defendant described in Application Note 3(A) who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal.

*Application Note 3(A) in U.S.S.G. §3B1.2* states in pertinent part:

This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity. . . . Likewise, a defendant who is accountable under §1B1.3 for a loss amount under §2B1.1 (Theft, Property Destruction and Fraud) that greatly exceeds the defendant's personal gain from a fraud offense or who had limited knowledge of the scope of the scheme may

> receive an adjustment under this guideline. For example, a defendant in a health care fraud scheme, whose participation in the scheme was limited to serving as a nominee owner and who received little personal gain relative to the loss amount, may receive an adjustment under this guideline.

*U.S.S.G. §3B1.2, Application Note 3(A).*

In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (v) the degree to which the defendant stood to benefit from the criminal activity. *United States v. DeVaron*, 175 F.3d 930, 945 (11th Cir. 1999).

Based on the foregoing it is clear that i) the Defendant had an extremely limited understanding of the scope and structure of the subject criminal activity, beyond his role as a crew member; ii) the Defendant did not participate in the planning or organization of the charged criminal conduct; iii) the Defendant did not exercise any decision-making authority in the charged conspiracy; iv) Defendant's role was limited to solely that of a crewmember with no specialized role, skill, or training; and v) the benefit he stood to receive for his participation in this conspiracy was minute (payment as a crewmember with no proprietary interest in the criminal activity) in comparison to others involved herein.

A minimal participant is one who is "plainly among the least culpable of those involved in the conduct of a group." *United States v. Jimenez*, 756 Fed. Appx. 909 (11th Cir. 2018). A

"defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role a minimal participant." *Id.*

In *United States v. Rodriguez*, 44 F.4th 1229 (9th Cir. 2022), the court vacated and remanded a case because the district court failed to properly consider the factors in U.S.S.G. § 3B1.2(c). The court held that the district court erred in treating each factor in the commentary for the minor role sentencing guideline as presenting a binary choice. The court stated: "We have recently held that district courts must consider all of these factors when determining whether to grant a mitigating-role adjustment. Thus, gone are the days when district courts had virtually unlimited discretion to simply deem a defendant to be of above average, average or below average culpability." *Id.* at 1233.  The court went on to hold: "We recently clarified that the mitigating-role commentary's reference to the 'average participant' refers to the 'mathematical average,' and that to calculate that average 'all likely participants in the criminal scheme must be included.'" *Id.* at 1234. This means that even "those that the district court believes were leaders or organizers or who were otherwise highly culpable" must be included in the calculation. *Id.* Therefore, each co-participant's culpability affects the minor role analysis, and the district court erred by holding that Gordo's culpability was not relevant. *Id.*

Mr. Pereyra's conduct meets the criteria, and the factors set out in U.S.S.G. § 3B1.2 and thus, a minor role adjustment is warranted.

    **(ii)**    **<u>OBJECTION TO PSR PARAGRAPHS 14 & 21 ADJUSTMENT FOR ROLE IN THE OFFENSE FOR OBSTRUCTION OF JUSTICE PURSUANT TO *U.S.S.G. § 3C1.2 RECKLESS ENDANGERMENT DURING FLIGHT*</u>**

In paragraph 14 of the PSR, the probation officer has assessed a two (2) level increase adjustment alleging that "The defendants recklessly created a substantial risk of death or serious

bodily injury to another person". As a basis for this assessment the probation officer alleges that "The GFV refused to stop causing the crew of the helicopter to employ warning shots to make the GFV stop. Following the warning shots, the GFV went dead in the water. As such, an adjustment pursuant to § 3C1.2 is recommended."

First, this is a Title 46 case where GFV's are located on the high seas or international waters and where there is always a "chase" of some sort because the GFV's are always moving, navigating on the open seas.  Second, simply because a member of the armed forces or a coast guard decides to become "trigger happy" when they are not being fired upon, does not make the conduct of a crew member who is not captaining the vessel, reckless or endangering anyone during flight. Third, there is nothing in the PSR that reflects that the GFV was ordered to halt or stop. *(See, PSR paragraphs 5-10).* The reports from the Coast Guard reflect that the only attempt by the helicopter to contact the GFV was communication via radio contact, however, the evidence in the case shows that the GFV had no radio on board. "Once in good position alongside the vessel I displayed the Coast Guard ensign as a visual signal to halt, while simultaneously the PAC hailed the vessel over radio channel Maritime 16 (international frequency for hailing and distress) for the vessel to halt, in both English and Spanish." *(See copy of Coast Guard ensign and report detailing attempt to communicate with GFV as **Composite Exhibit "A"**.*[1]

Fourth and most important, there has been no evidence presented in the PSR or in Discovery that Mr. Pereyra was the master/captain of the vessel or navigating the vessel at the time of the incident.

This circuit has applied the reckless endangerment during flight under § 3C1.2 to the captain of a vessel for his aggressive maneuvers in response to the Coast Guard's approach and orders to halt.

---

[1] Neither Mr. Pereyra nor any of the co-defendants would know what the Coast Guard ensign stands for let alone that it means to halt or stop.

*United States v. Hernandez, 864 F.3d 1292 (11ᵗʰ Cir. 2017) (The district court did not clearly err, either in attributing the aggressive maneuvers to Hernandez Almaraz, since he was the ship's captain, and the district court specifically found that Hernandez Almaraz actively caused the risk by controlling the actions of the boat.)*

To assess the enhancement under § 3C1.2, the district court **must** make a specific finding that the defendant actively caused or procured the reckless behavior at issue. *Id.; See also, United States v. Dougherty, 754 F.3d 1353, 1360 (11ᵗʰ Cir. 2014) citing United States v. Johnson, 694 F.3d 1192, 1196-97 (11ᵗʰ Cir. 2012).* Furthermore, a defendant cannot be held responsible for another's conduct under § 3C1.2 without some form of direct or active participation. *United States v. Cook, 181 F.3d 1232, 1235 (11ᵗʰ Cir. 1999).* Mere foreseeability of the conduct is insufficient. *Id.*

Therefore, the two (2) level adjustment under § 3C1.2 is unwarranted to be assessed against Mr. Pereyra.

### (iii)   OBJECTION TO PSR PARAGRAPH 16 BECAUSE DEFENDANT IS ENTITLED TO THE TWO (2) LEVEL SAFETY VALVE REDUCTION PURSUANT TO *U.S.S.G § 5C1.2*

Mr. Pereyra objects to the probation officer's failure to provide him with a safety valve adjustment under § 5C1.2. The probation officer states that "According to AUSA Rodriguez-Schack the defendant has not provided a safety valve statement detailing his involvement in the offense." On October 11ᵗʰ, 2024, the Government advised that it will not oppose the Defendants' objection to paragraph 16 of the PSR because the Government had agreed as early as July 2024, that the factual proffer statement, D.E. 44, would suffice as a safety valve statement and that Mr. Pereyra meets the other factors in § 5C1.2.

However, if the probation officer continues to insist that Mr. Pereyra is not entitled to a safety valve adjustment, the Defendant would assert as follows: The Defendant asserts that he has provided

8

a safety valve statement and also meets the requirements of § 5C1.2. Furthermore, the Defendant qualifies under both the original and the new Safety Valve requirements of the Amended First Step Act and as codified in 18 USC 3553(f). The Defendant has less than 4 criminal history points, has no prior 3-point offense, or a prior 2-point violence offense. The Defendant did not use violence or threats of violence or possess a firearm in connection with the offense. The Defendant's offense did not result in death or serious bodily injury to any person. The Defendant is not an organizer, leader, manager or supervisor of others. In fact, the Defendant has requested a minor role adjustment, although such an adjustment is not required for safety valve consideration.

Regarding the "safety valve statement detailing his involvement in the offense", since July 23rd, 2024, government counsel agreed via email that the defendants' factual proffers would be accepted by the government as their respective safety valve statements. This Court should enforce the agreement between the parties and prevent the Probation office from depriving Mr. Pereyra and the co-defendants from receiving a benefit they clearly have qualified for and are entitled to under the Sentencing Guidelines. *Santobello v. New York, 404 U.S. 257 (1971); United States v. Hunter, 835 F.3d 1320 (11th Cir. 2016); United States v. Al-Arian, 514 F.3d 1184, 1190 (11th Cir. 2008); United States v. Johnson, 132 F.3d 628 (11th Cir. 1998); United States v. Rewis, 969 F.2d 985 (11th Cir. 1992); United States v. Boatner, 966 F.2d 1575 (11th Cir. 1992); United States v. Taylor, 77 F.3d 368 (11th Cir. 1996).*

Therefore, Mr. Pereyra is entitled to safety valve adjustment of two (2) levels because he has met and does meet the requirements of § 5C1.2.

**(iv)**     **<u>OBJECTION TO PSR PARAGRAPHS 18, 23, 27 & 60: BASE OFFENSE LEVEL, ADJUSTED OFFENSE LEVEL, TOTAL OFFENSE LEVEL, & GUIDELINE PROVISIONS</u>**

Defendant objects to Paragraphs 18, 23, 27 & 60 of the PSR, which seeks to recommend that Defendant be held accountable under the Sentencing Guidelines for a Total Offense Level of thirty-three (33), Criminal History I, resulting in a guideline sentencing range of 135 to 168 months imprisonment. In accordance with the foregoing, paragraphs 24 & 25 of the PSR, and U.S.S.G. § 2D1.1(a)(5), Defendant submits that his Total Offense Level should be twenty-four (24), not thirty-three (33), based upon Defendant receiving a two-level reduction for minor role resulting in the base level of 33 not 35, minus 2 levels for minor role, minus 2 levels for safety valve, minus 2 levels for zero criminal history points and minus 3 levels for acceptance of responsibility. As such, Defendant's applicable guidelines range should be 51 to 63 months imprisonment (i.e. total offense level 24, Criminal History Category I). [2]

## II.    SENTENCING MEMORANDUM

Pursuant to the offense level computations set forth herein, Defendant asserts that a sentence at the low-end of the guidelines range (Total Offense Level 24, Crim His I = 51 to 63 months imprisonment) with a small downward departure/variance[3] is "sufficient but not greater than necessary" for punishment under *18 U.S.C. §3553(a)*.

### SENTENCING AFTER BOOKER

In *Booker*, the Supreme Court held that the Sentencing Guidelines are no longer mandatory and constitute only one of the sentencing factors that the Court must consider under *18 U.S.C. §3553(a)*. *United States v. Booker, 125 S.Ct. 738, 757 (2005)*. Under *Booker,* sentencing decisions

---

[2] A sentence along the proposed guideline range would be in line with sentences imposed in this district in Title 46 cases. See, *US v. Jose Julio Hernandez-Olaya, 21-cr-20438-Bloom (57 months); US v. Alexander Castillo, 16-cr-20060-Scola (41 months); US v. Johnny Jones 15-cr-20463-Williams (70 months); US v. Moises Adon Fajardo-Pena, 22 cr-20415-Williams (credit for time served).* These were all cases handled by the undersigned's through CJA court appointment and most if not all, were handled by AUSA Rodriguez-Schack.

[3] Mr. Pereyra will be requesting a small downward departure/variance in Section III herein, for the additional incarceration time he will spending in ICE custody awaiting deportation.

are subject to a "reasonableness" standard of review which must be measured against the factors outlined by Congress in *§3553(a)*. *Booker, 125 S.Ct. at 761*. A sentence outside the advisory guideline range does not need to be justified by "extraordinary circumstances." *Gall v. United States, 128 S. Ct. 586 (2007)*. Indeed, the Supreme Court has specifically rejected any presumption of unreasonableness for sentences outside the guideline range. *Gall, 128 S. Ct. at 595*. The Eleventh Circuit has advised that "*after it makes [its] guideline calculation, the District Court may impose a more severe or more lenient sentence as long as the sentence is reasonable.*" *See United States v. Crawford, 407 F.3d 1174 at 1179 (11th Cir. 2005); See also United States v. Williams, 456 F.3d 1353, 1363(11th Cir. 2006)*. The sentence imposed must be "sufficient but not greater than necessary" to achieve the four purposes of sentencing outlined in *§3553(a)(2)*. *See United States v. Adelson, 441 F.Supp.2d 506 (SDNY 2006)* (finding the mechanical application of the advisory sentencing guidelines in a fraud case where losses totaled $260 million would produce a sentence far greater than necessary for punishment under §3553(a)).

Here, this Court must consider Mr. Pereyra's individual history, family circumstances, and overall conduct to determine an appropriate sentence. Together with other evidence as to Mr. Pereyra's character and individual conduct, a sentence at the low end of the guidelines set forth herein (ie. total offense level 24 with a small downward departure/variance) is warranted, given the statutory factors set forth in *18 U.S.C. §3553(a)*. As set out below, *each* of the applicable sentencing factors set forth in *18 U.S.C. §3553(a)* amply justify such a sentence.

A. **ANALYSIS OF 18 U.S.C. § 3553(A) FACTORS**

**FACTOR 1: NATURE OF THE OFFENSE AND
HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

1. **Nature of the Offense**

Count 1 of the Indictment in this case charges the Defendant and two (2) Co-Defendants with a conspiracy to possess five (5) kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of Title 46 United States Code § 70503(a)(1) and § 70506(b). Count 2 charges Mr. Pereyra and two (2) co-defendants with possession with intent to distribute five (5) kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States in violation of Title 46 United States Code § 70503(a)(1). The summary of the facts regarding the offense are set out in the factual proffer which will be provided to the Court at sentencing but are also set out in PSR paragraphs 5-10. As a result of Mr. Pereyra's acceptance of responsibility and timely notification of his intention to plead guilty, the PSR properly recommends a three (3) level reduction, pursuant to *U.S.S.G. §3E1.1*.

Mr. Pereyra pled guilty to Counts 1 & 2 of the Indictment based on one instance where he was a crewmember aboard a GFV. Mr. Pereyra was not the captain of the vessel, or responsible for navigating, maintaining the vessel, or undertaking any other specialized task related to the operation of the vessel. Additionally, Mr. Pereyra did not design, build, commission, or own the subject GFV, and was solely recruited to serve as a crewmember aboard the GFV after all the preparations had been finalized by other individuals. As set forth herein, the Defendant's actual conduct and role herein was such that Mr. Pereyra should receive a minor role reduction under *U.S.S.G. §3B1.2(b)*.

Therefore, Mr. Pereyra respectfully requests that this court consider his actual role in the offense and his prompt acceptance of responsibility as sentencing factors that weigh strongly in Defendant's favor.

**2.     History and Characteristics of the Defendant**.

12

Mr. Pereyra is a man whose parents separated when he was three (3) years old. He began working to help support his family at the age of nine (9). He lost his mother when he was sixteen (16) and went to live with his father and his father's family. Mr. Pereyra has the equivalent of a tenth-grade education. In an effort to atone for his illegal conduct herein, Mr. Pereyra timely admitted to his conduct and accepted responsibility for the same.

Mr. Pereyra is a family-oriented man, who has taken care of his child, and that of his partner. He has had a very hard life. *(See PSR paragraphs 34-41 and 49-50).* Unfortunately, Mr. Pereyra made one (1) wrong choice, in an otherwise long and law-abiding life, a choice that has resulted in his current situation and one that he is attempting to correct and atone for through his acceptance of responsibility.

Despite these difficult times and Mr. Pereyra's current legal situation, his family and friends continue to support him. The overwhelming support that he continues to receive is further evidence that he is redeemable and will have significantly greater support than usual in his rehabilitation, which is a factor that weighs heavily in his favor. *See United States v. Jones, 158 F.3d 492 (10th Cir. 1998)* (noting that defendant's community service and degree of community support was a valid factor for Court to consider in fashioning an appropriate sentence).

### FACTOR 2: THE PURPOSES OF SENTENCING - (REHABILITATION, SPECIFIC DETERRENT, GENERAL DETERRENT, AND RETRIBUTION)

### 1.   REHABILITATION:

A low-end sentence (with a total offense level 24) is sufficient, but not greater than necessary, for Mr. Pereyra's rehabilitation. In fact, as we all know, there are few rehabilitation programs within the Federal Bureau of Prisons. Mr. Pereyra's timely acceptance of responsibility, and remorse for his actions attest to his beginning his rehabilitation. Rather than to deny his

13

involvement or to protect others, Mr. Pereyra has instead demonstrated a desire to take responsibility for his actions and poor judgment.  These factors speak directly to his rehabilitation and weigh strongly in his favor.

**2. SPECIFIC DETERRENCE:**

A lengthy term of imprisonment is not necessary to protect society from Mr. Pereyra, given that he poses a very low probability of recidivism. The Sentencing Commission's report, "Measuring Recidivism," demonstrated that (1) those who are married are less likely to recidivate than those who were not; (2) those who have not used illicit drugs are less likely to recidivate than those who did; (3) non-violent offenders are less likely to recidivate than violent offenders; (4) first time offenders are less likely to recidivate than repeat offenders; (5) those who are employed are less likely to recidivate than those who are not employed; and (6) those who are sentenced to non-jail sentences are less likely to recidivate than those who receive straight jail.  Furthermore, Commission studies show that minimal or no prior involvement with the criminal justice system is a powerful predictor of a reduced likelihood of recidivism. *See USSC, "A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score,"at 15 (2005).*

Mr. Pereyra's personal history shows that he has an exceedingly low chance of recidivism, based on the factors provided in the Sentencing Commission's studies. As set forth above, as well as in the PSR, Mr. Pereyra has a supportive partner and family, has a criminal history category I, and is charged with a non-violent offense. Furthermore, because he is not a US resident or citizen he will, upon release, be transferred to ICE custody to be processed for deportation. There he will spend many additional months in custody (estimated to be 4-6 months in additional custody) until ICE receives the necessary travel documents from Mr. Pereyra's country of citizenship

14

(Dominican Republic) before he is deported.  He does not have a Dominican passport. *(See, PSR paragraph 41).* For these reasons, it is extremely unlikely that Mr. Pereyra will ever commit another criminal offense.

**3. GENERAL DETERRENCE:**

"General Deterrence" aims to deter *others* from committing crimes. While the government may correctly point out that the instant offense is a serious crime, sentencing Mr. Pereyra to a lengthy prison term is not necessary for purposes of general deterrence. Mr. Pereyra is not a high-profile defendant who lived a lavish lifestyle based on criminal activity whom the public is likely to see as treated leniently unless he goes to prison for a lengthy period of time. On the contrary, his forthright remorse, and acceptance of responsibility offer an example to the public of the importance of timely accepting responsibility for one's wrongdoing. By rewarding Mr. Pereyra appropriately for his willingness to admit his illegal conduct, pleading guilty, and accepting responsibility for his actions, the Court effectively sends a message to others who may be involved in criminal behavior that prompt acceptance of responsibility offers the opportunity to make up for prior wrongdoing. Such a message has at least as much value for general deterrence purposes as sending Mr. Pereyra to prison for a lengthy period.

**4.   RETRIBUTION (JUST PUNISHMENT):**

While retribution is an important statutory factor under §3553(a), the overriding command of the law is for the Court to achieve a sentence that is "sufficient but not greater than necessary." See *United States v. Adelson*, *441 F.Supp. 2d 506, 515 (SDNY 2006)* ("We are aware of no empirical evidence or studies indicating that a long prison sentence is necessary to achieve the retributive and general deterrence objectives applicable to a case like this one").

**FACTOR 3: THE KINDS OF SENTENCES AVAILABLE**

Title 18 U.S.C. §3553(a) expressly dictates that "[t]he Court shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in ¶ (2) of this subsection" (*emphasis added*). As Judge Rakoff pointed out in *Adelson,* the operative word in this congressional mandate*,* is "necessary." *441 F.Supp.2d at 515*. Under Factor 3 in §3553(a), the Congress directs the Court to consider a wide range of alternatives to imprisonment if the availability of those alternatives would render a prison sentence "unnecessary."

## FACTORS 4-5: THE ADVISORY SENTENCING GUIDELINES AND POLICY STATEMENTS

The PSR finds Mr. Pereyra's total offense at level 33, with a criminal history category of I, resulting in a sentencing range of 135 to 168 months. As set forth above, the Defendant should be entitled to a minor role reduction under *§3B1.2* and a safety valve adjustment under *§ 5C1.2*.  Based on the foregoing arguments, Mr. Pereyra's total offense level should be a level 24, resulting in a sentencing range of 51 to 63 months' imprisonment. Defendant believes that a sentence at the low-end of the guidelines (i.e. 51 months' imprisonment with a small departure/variance for the time he will spend in ICE custody), without any other considerations, would be a reasonable and appropriate sentence.

## FACTOR 6: AVOIDING DISPARITY WITH SIMILAR OFFENDERS

Here, Mr. Pereyra and his Co-Defendants are all scheduled for sentencing at the same time. As no disparity of sentence presently exists, this Court should take notice of the extensive case law provided herein detailing the downward departures granted in cases involving similar offenses and/or guidelines calculations as those present herein. The Court should also note that most of the cases set forth above involve offense levels similar to the offense level of the Defendant herein.

## FACTOR 7: RESTITUTION

16

Mr. Pereyra's relevant conduct herein and offense of conviction do not carry a restitution obligation. Therefore, this sentencing factor is inapplicable as it relates to this Court's sentencing determination.

### III.   OBJECTION TO PARAGRAPH 70 AND REQUEST FOR DOWNWARD DEPARTURE/VARIANCE PURSUANT TO *18 U.S.C. 3553* and *U.S.S.G § 5K2.0*

Mr. Pereyra objects to paragraph 70 of the PSR wherein the probation officer states, "The probation officer has not identified any factors that may warrant a departure and/or variance." The Defendant asserts that there are factors that warrant a departure and/or variance and requests that the Court grant him a downward departure/ variance under 18 USC § 3553 and/or U.S.S.G. 5K2.0 for the following reasons:

First, for the additional incarceration time he will spend in ICE custody awaiting deportation to the Dominican Republic. After completion of his sentence, the Defendant will be transferred to INS custody to be processed for removal from the United States. The Defendant has no travel documents and must await, while in INS custody awaiting deportation, for the Government to obtain travel documents from the Dominican Republic so he may be deported/removed and allowed to enter that country legally. It is estimated that the average additional time of incarceration while awaiting travel documents from a foreign country is 4-6 months on average.

As a second basis for a variance, this Court found that the Government had violated Rule 5(a)(1)(B) for the delay in bringing the defendants before a magistrate after they were interdicted and detained, but that the only authorized remedy, i.e. suppression of any evidence obtained as a result of the violation, was an empty remedy because no evidence was gathered against the Defendants during the delay in their presentment. *(See, D.E. 38 Order On Joint Motion to Dismiss*

17

*@ pgs. 22-24).* This Court as a matter of general deterrence to the practices it found to be egregious and in violation of Rule 5(a)(1)(B) should grant a downward variance to Mr. Pereyra so that the government understands that violating rules, especially ones that are designed to protect the due process rights of defendants, have consequences.

As a third basis for a variance, notwithstanding the probation officer's statement in paragraph 70 of the PSR, the defense requests that the Court take Judicial Notice of the United States Sentencing Commission (Statistical Information Packet for Fiscal Year 2023, Southern District of Florida. *(Attached hereto as **Exhibit "B"**).* [4] Pursuant to the sentencing data from the Sentencing Commission for the Southern District of Florida for the fiscal year 2023, district court judges granted variances in 57.5% of drug trafficking cases. Nationally, in 2023, district court judges granted variances in 41.1% of drug trafficking cases. The percentage of upward departures in the entire SDFL in drug trafficking cases in 2023 was zero. Nationally the percentage of upward departures in drug trafficking cases in 2023 was 0.3%. *(See, Table 10 at page 16 of **Exhibit "B"**).* Should the Court overrule Mr. Pereyra's objections as set out herein, it would, in effect, be granting an upward departure sentence by default. The undersigned asks a rhetorical question: How is it possible that a probation officer can state that he/she "has not identified any factors that would warrant a departure and/or variance, when the data from the Sentencing Commission shows that in this district, judges have found in 57.5% of drug trafficking cases that there are factors that warrant a downward departure and/or variance and have given downward departures and/or variances?

---

[4] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2023/fls23.pdf

As a fourth basis for a downward departure/variance, this Court may impose a sentence below the Sentencing Guidelines, as other courts have done, because of the conditions of detention/confinement or imprisonment endured by the defendants. In doing so, the Court can follow the factors in 18 U.S.C. § 3553 or USSG § 5K2.0, which permits a downward departure for conditions of detention/confinement/incarceration. *See, United States v. Carty, 264 F.3d 191, 196 (2d Cir. 2001)* (holding that conditions of incarceration "may in appropriate cases be a permissible basis for downward departures); *United States v. Hernandez-Santiago, 92 F.3d 97 (2d Cir. 1996*); *United States v. Sutton, 973 F.Supp. 488, 493 (D.N.J. 1997), aff'd 156 F.3d 1226 (3d Cir. 1998);* and *United States v. Navarro, 962 F.Supp. 629, 635 (D.N.J. 19*97).

The defendants in this case were shackled 24/7, for sixteen (16) continuous days, and only momentarily unshackled when being allowed to shower, use the facilities to relieve themselves, when being fed, or when allowed to exercise at the discretion of the officer. *(See, D.E. 38 Order on Joint Motion to Dismiss @ pgs. 8-9).*

Mr. Pereyra asserts that the above reasons taken individually or collectively provide sufficient reasons for a downward variance.

## IV.    CONCLUSION

**WHEREFORE**, for the reasons detailed herein, the Defendant, ANDRES PEREYRA, respectfully prays that this Honorable Court adopt the above stated objections to the Presentence Investigation Report, and find that the guidelines range applicable herein is a level 24, criminal history category I, resulting in a range of 51 to 63 months, and sentence the Defendant to less than 51 months imprisonment by granting him a variance for the reasons set out in argument III herein, as well as any other relief the Court deems appropriate under the circumstances.

Mr. Pereyra and Counsel thank this Court for considering his objections to the Presentence Investigation Report (PSR), and Sentencing Memorandum. Counsel will have further remarks at the time of sentencing.

Respectfully submitted,

**QUINTERO BROCHE, P.A.**
*Attorneys for Defendant*

By: /s/ *Frank Quintero, Jr.*
FRANK QUINTER0, Jr.
Florida Bar No.: 399167

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed via *CM/ECF* this 15th day of October, 2024, and a copy served upon all counsel of record.

Respectfully submitted,

**QUINTERO BROCHE, P.A.**
*Attorneys for Defendant*
75 Valencia Ave., 8th Floor
Coral Gables, Florida 33134
Tel.:    (305) 446-0303
Fax:    (305) 446-4503

By:    /s/FRANK QUINTERO, JR.
FRANK QUINTERO, JR.
Florida Bar No.: 399167

20

# COMPOSITE EXHIBIT A



**Statement of Officer Fentzke on TWON Go-Fast Vessel, October 22, 2023**

While on a routine patrol in the Caribbean Ocean, onboard USS Farragut (FAR/DDG99) with embarked Law Enforcement Detachment Team (LEDET 403), and embarked Helicopter Maritime Strike Squadron 50 (HSM 50) and MH60R Helicopter "Raven 555" (R-555). On the afternoon of 22OCT23, at approximately 1200L, local R-555 launched in search of Surface Target of Interest (STOI) that was spotted by a Maritime Patrol Aircraft (MPA). The MPA described the STOI as a white and blue panga style vessel 30ft in length with approximately 03 People on Board (POB) and a single outboard engine. The Airborne Use of Force (AUF) capable flight crew was as follows:

AUF Pilot at Controls (PAC) Right Seat: LT Husemann (HAC)

AUF Airborne Tactics Officer (ATO) Left Seat: LT Leydens

AUF Air Crewman: AWR1 Ridlen

Precision Marksman – Aviation (PM-A): Officer J. Infante-Gil

Airborne Use of Force Controller (AUF-C): Officer T. Fentzke (Self)

Upon launching, R-555 established radio communications with the MPA and set a course for intercept and pass-off. Upon closing a distance of approximately 20 KM, R-555 was able to visually assess the STOI via the Forward Looking Infrared (FLIR) camera, while maintaining a covert flight profile to assess the STOI.

The vessel description I observed was as follows:

Style of vessel: Panga

Propulsion: 01 outboard engine

**Statement of Officer Fentzke on TWON Go-Fast Vessel, October 22, 2023**

POB: 03

Upon visually acquiring the STOI, I began to relay information via the LE-03 form to the LEDET Deployable Team Leader (DTL), requesting a Statement of No Objection (SNO) to conduct a Right of Visit (ROV) boarding of the STOI in accordance with international law. At approximately 1250L, R-555 received a SNO for an ROV boarding including warning shots and disabling fire to compel compliance on a profile go-fast vessel, in accordance with international law.

Upon receipt and confirmation of the SNO from all members of the air crew, at approximately 1255L, R-555 went overt and made best speed towards the STOI. As we made our approach to the STOI and began positioning for lights and callouts I observed as the POB began to jettison what appeared to be bales of suspected contraband and a blue barrel over the side. I immediately called for the pilots to mark the location and watched officer Infante-Gil con the aircraft in to position to mark the jettison field using a smoke flair. R-555 held back and I marked the location of the jetton field using a MK-58 smoke float and location marker and continued pursuit of the STOI.

Upon re-gaining position alongside the STOI I visually scanned the vessel for indicia of nationality, as well as any threats to the aircraft, and additional POB, I confirmed 03 POB, what appeared to be fuel drums in the center portion of the vessel and no indication of nationality. Once in a good position alongside the vessel, I displayed the Coast Guard ensign as a visual signal to the vessel to halt, while simultaneously the PAC hailed the vessel over radio channel Maritime 16 (international frequency for hailing and distress) for the vessel to halt, in both English and Spanish.

Statement of Officer Fentzke on TWON Go-Fast Vessel, October 22, 2023

The STOI continued making way and failed to heave to.  Following these actions, I relayed that lights and call outs had been ineffective to the Deployable Team Leader, the STOI was still underway, making way, and non-compliant. The PAC issued the order to prepare for warning shots, at which point Officer Infante-Gil con the aircraft into a position forward of the forward most occupant, and with a clear gun target line forward, abeam, and beyond the vessel. Once clear, Officer Infante-Gil relayed that he was ready aft for warning shots, at which point the PAC gave the command to commence fire.  Officer Infante-Gil fired 03 stitches of warning shots forward of the vessels bow, utilizing the M240 mounted on the right side of R-555.  At the completion of waring shots, the STOI dramatically slowed and approximately 1330L, came to all stop, appeared to be compliant, and Dead in the Water (DIW).

R-555 maintained an orbit around the STOI and waited for the boarding team to make their approach.  At this point Officer Infante-Gil passed the M240 to the crewman and prepared for boarding team cover utilizing a precision rifle.  Once the boarding team was on scene, I observed as they recovered several of the jettisoned packages then moved toward the STOI. Officer Infante-Gil provided cover for the boarding team as they came alongside and I provided Communications to the deployable team leader and the boarding team, while watching the boarding team gain positive control of the STOI.  Once positive control was gained, R-555 broke station but remained on scene to collect day time imagery of the STOI then returned to FAR and shut down.

Upon returning to FAR Officer Infante-Gil (PM-A) and myself (AUF -C) disembarked R-555 and proceeded to monitor communications between assets until authorization was granted to embark personnel on board the STOI as detainees.  Upon receipt of detainees, I assisted fellow

Statement of Officer Fentzke on TWON Go-Fast Vessel, October 22, 2023

LEDET and Navy personnel to process 03 detainees to include, frisking, medical screening, bathing, gathering images of detainees and inventorying personal property.

This statement is true to the best of my knowledge.

Officer T. Fentzke, USCG

# EXHIBIT B

# United States Sentencing Commission



## *Statistical Information Packet*

### *Fiscal Year 2023*
### *Southern District of Florida*

## TABLE OF CONTENTS

| | | |
|---|---|---|
| **Figure A** | Sentenced Individuals by Type of Crime | 1 |
| **Figure B** | Distribution of Primary Drug Type in Federal Drug Cases | 2 |
| **Table 1** | Distribution of Sentenced Individuals by Type of Crime | 3 |
| **Table 2** | Guilty Pleas and Trials in Each Circuit and District | 4 |
| **Table 3** | Guilty Pleas and Trials by Type of Crime | 7 |
| **Table 4** | Sentence Type by Type of Crime (National) | 8 |
| **Table 5** | Sentence Type by Type of Crime (District) | 9 |
| **Table 6** | Incarceration Rate of U.S. Citizens Eligible for Non-Prison Sentences by Type of Crime | 10 |
| **Table 7** | Sentence Length by Type of Crime | 11 |
| **Table 8** | Sentence Imposed Relative to the Guideline Range | 12 |
| **Table 9** | Sentence Imposed Relative to the Guideline Range in Each Circuit and District | 13 |
| **Table 10** | Sentence Imposed Relative to the Guideline Range by Type of Crime | 16 |

## Figure A

### SENTENCED INDIVIDUALS BY TYPE OF CRIME
### Fiscal Year 2023

### National



### Southern Florida



The National figure includes the 64,124 cases reported to the Commission. The Drugs category includes trafficking and simple possession.

The Southern District of Florida figure includes the 1,552 cases reported to the Commission.

SOURCE: U.S. Sentencing Commission, 2023 Datafile, USSCFY23.

1

### Figure B

## DISTRIBUTION OF PRIMARY DRUG TYPE IN FEDERAL DRUG CASES
### Fiscal Year 2023

### National



### Southern Florida



Of the 64,124 National cases, in 19,066 the individual was sentenced under USSG Chapter Two, Part D (Drugs).

Of the 1,552 cases from the Southern District of Florida, in 416 the individual was sentenced under USSG Chapter Two, Part D (Drugs).

SOURCE: U.S. Sentencing Commission, 2023 Datafile, USSCFY23.

## Table 1

### DISTRIBUTION OF SENTENCED INDIVIDUALS
### BY TYPE OF CRIME
### Fiscal Year 2023

| TYPE OF CRIME | National | | Southern Florida | |
|---|---|---|---|---|
| | N | % | N | % |
| **TOTAL** | 64,124 | 100.0 | 1,552 | 100.0 |
| Administration of Justice | 647 | 1.0 | 15 | 1.0 |
| Antitrust | 18 | 0.0 | 0 | 0.0 |
| Arson | 106 | 0.2 | 0 | 0.0 |
| Assault | 852 | 1.3 | 4 | 0.3 |
| Bribery/Corruption | 366 | 0.6 | 26 | 1.7 |
| Burglary/Trespass | 85 | 0.1 | 1 | 0.1 |
| Child Pornography | 1,408 | 2.2 | 49 | 3.2 |
| Commercialized Vice | 84 | 0.1 | 0 | 0.0 |
| Drug Possession | 139 | 0.2 | 1 | 0.1 |
| Drug Trafficking | 19,007 | 29.6 | 415 | 26.7 |
| Environmental | 160 | 0.2 | 18 | 1.2 |
| Extortion/Racketeering | 130 | 0.2 | 1 | 0.1 |
| Firearms | 8,832 | 13.8 | 174 | 11.2 |
| Food and Drug | 55 | 0.1 | 2 | 0.1 |
| Forgery/Counter/Copyright | 112 | 0.2 | 2 | 0.1 |
| Fraud/Theft/Embezzlement | 5,205 | 8.1 | 299 | 19.3 |
| Immigration | 19,226 | 30.0 | 332 | 21.4 |
| Individual Rights | 113 | 0.2 | 1 | 0.1 |
| Kidnapping | 151 | 0.2 | 6 | 0.4 |
| Manslaughter | 86 | 0.1 | 0 | 0.0 |
| Money Laundering | 1,312 | 2.0 | 70 | 4.5 |
| Murder | 489 | 0.8 | 9 | 0.6 |
| National Defense | 237 | 0.4 | 7 | 0.5 |
| Obscenity/Other Sex Offenses | 326 | 0.5 | 4 | 0.3 |
| Prison Offenses | 455 | 0.7 | 6 | 0.4 |
| Robbery | 1,503 | 2.3 | 45 | 2.9 |
| Sexual Abuse | 1,395 | 2.2 | 34 | 2.2 |
| Stalking/Harassing | 240 | 0.4 | 8 | 0.5 |
| Tax | 446 | 0.7 | 21 | 1.4 |
| Other | 939 | 1.5 | 2 | 0.1 |

SOURCE:  U.S. Sentencing Commission, 2023 Datafile, USSCFY23.

Table 2

## GUILTY PLEAS AND TRIALS IN EACH CIRCUIT AND DISTRICT
### Fiscal Year 2023

| CIRCUIT | | PLEA | | TRIAL | |
| District | TOTAL | N | % | N | % |
| --- | --- | --- | --- | --- | --- |
| TOTAL | 64,124 | 62,300 | 97.2 | 1,824 | 2.8 |
| D.C. CIRCUIT | 503 | 388 | 77.1 | 115 | 22.9 |
| District of Columbia | 503 | 388 | 77.1 | 115 | 22.9 |
| FIRST CIRCUIT | 1,949 | 1,905 | 97.7 | 44 | 2.3 |
| Maine | 116 | 115 | 99.1 | 1 | 0.9 |
| Massachusetts | 477 | 449 | 94.1 | 28 | 5.9 |
| New Hampshire | 160 | 159 | 99.4 | 1 | 0.6 |
| Puerto Rico | 1,090 | 1,076 | 98.7 | 14 | 1.3 |
| Rhode Island | 106 | 106 | 100.0 | 0 | 0.0 |
| SECOND CIRCUIT | 3,219 | 3,075 | 95.5 | 144 | 4.5 |
| Connecticut | 355 | 342 | 96.3 | 13 | 3.7 |
| New York | | | | | |
| Eastern | 709 | 663 | 93.5 | 46 | 6.5 |
| Northern | 459 | 452 | 98.5 | 7 | 1.5 |
| Southern | 1,148 | 1,083 | 94.3 | 65 | 5.7 |
| Western | 411 | 399 | 97.1 | 12 | 2.9 |
| Vermont | 137 | 136 | 99.3 | 1 | 0.7 |
| THIRD CIRCUIT | 2,362 | 2,259 | 95.6 | 103 | 4.4 |
| Delaware | 104 | 101 | 97.1 | 3 | 2.9 |
| New Jersey | 723 | 694 | 96.0 | 29 | 4.0 |
| Pennsylvania | | | | | |
| Eastern | 529 | 496 | 93.8 | 33 | 6.2 |
| Middle | 409 | 391 | 95.6 | 18 | 4.4 |
| Western | 530 | 515 | 97.2 | 15 | 2.8 |
| Virgin Islands | 67 | 62 | 92.5 | 5 | 7.5 |
| FOURTH CIRCUIT | 4,313 | 4,127 | 95.7 | 186 | 4.3 |
| Maryland | 503 | 471 | 93.6 | 32 | 6.4 |
| North Carolina | | | | | |
| Eastern | 847 | 825 | 97.4 | 22 | 2.6 |
| Middle | 326 | 317 | 97.2 | 9 | 2.8 |
| Western | 362 | 341 | 94.2 | 21 | 5.8 |
| South Carolina | 644 | 630 | 97.8 | 14 | 2.2 |
| Virginia | | | | | |
| Eastern | 884 | 832 | 94.1 | 52 | 5.9 |
| Western | 210 | 196 | 93.3 | 14 | 6.7 |
| West Virginia | | | | | |
| Northern | 310 | 298 | 96.1 | 12 | 3.9 |
| Southern | 227 | 217 | 95.6 | 10 | 4.4 |

4

| CIRCUIT | | PLEA | | TRIAL | |
| District | TOTAL | N | % | N | % |
|---|---|---|---|---|---|
| **FIFTH CIRCUIT** | **17,542** | **17,357** | **98.9** | **185** | **1.1** |
| Louisiana | | | | | |
| Eastern | 331 | 318 | 96.1 | 13 | 3.9 |
| Middle | 96 | 93 | 96.9 | 3 | 3.1 |
| Western | 340 | 331 | 97.4 | 9 | 2.6 |
| Mississippi | | | | | |
| Northern | 164 | 159 | 97.0 | 5 | 3.0 |
| Southern | 372 | 358 | 96.2 | 14 | 3.8 |
| Texas | | | | | |
| Eastern | 716 | 706 | 98.6 | 10 | 1.4 |
| Northern | 1,559 | 1,535 | 98.5 | 24 | 1.5 |
| Southern | 6,425 | 6,379 | 99.3 | 46 | 0.7 |
| Western | 7,539 | 7,478 | 99.2 | 61 | 0.8 |
| **SIXTH CIRCUIT** | **4,613** | **4,442** | **96.3** | **171** | **3.7** |
| Kentucky | | | | | |
| Eastern | 444 | 413 | 93.0 | 31 | 7.0 |
| Western | 337 | 320 | 95.0 | 17 | 5.0 |
| Michigan | | | | | |
| Eastern | 696 | 669 | 96.1 | 27 | 3.9 |
| Western | 240 | 228 | 95.0 | 12 | 5.0 |
| Ohio | | | | | |
| Northern | 880 | 847 | 96.3 | 33 | 3.8 |
| Southern | 623 | 612 | 98.2 | 11 | 1.8 |
| Tennessee | | | | | |
| Eastern | 647 | 632 | 97.7 | 15 | 2.3 |
| Middle | 288 | 278 | 96.5 | 10 | 3.5 |
| Western | 458 | 443 | 96.7 | 15 | 3.3 |
| **SEVENTH CIRCUIT** | **2,270** | **2,164** | **95.3** | **106** | **4.7** |
| Illinois | | | | | |
| Central | 260 | 239 | 91.9 | 21 | 8.1 |
| Northern | 620 | 587 | 94.7 | 33 | 5.3 |
| Southern | 261 | 239 | 91.6 | 22 | 8.4 |
| Indiana | | | | | |
| Northern | 262 | 250 | 95.4 | 12 | 4.6 |
| Southern | 393 | 382 | 97.2 | 11 | 2.8 |
| Wisconsin | | | | | |
| Eastern | 328 | 322 | 98.2 | 6 | 1.8 |
| Western | 146 | 145 | 99.3 | 1 | 0.7 |
| **EIGHTH CIRCUIT** | **5,143** | **4,993** | **97.1** | **150** | **2.9** |
| Arkansas | | | | | |
| Eastern | 548 | 531 | 96.9 | 17 | 3.1 |
| Western | 177 | 175 | 98.9 | 2 | 1.1 |
| Iowa | | | | | |
| Northern | 338 | 327 | 96.7 | 11 | 3.3 |
| Southern | 440 | 423 | 96.1 | 17 | 3.9 |
| Minnesota | 353 | 338 | 95.8 | 15 | 4.2 |
| Missouri | | | | | |
| Eastern | 954 | 943 | 98.8 | 11 | 1.2 |
| Western | 841 | 819 | 97.4 | 22 | 2.6 |
| Nebraska | 567 | 552 | 97.4 | 15 | 2.6 |
| North Dakota | 413 | 404 | 97.8 | 9 | 2.2 |
| South Dakota | 512 | 481 | 93.9 | 31 | 6.1 |

| CIRCUIT | | PLEA | | TRIAL | |
| District | TOTAL | N | % | N | % |
| NINTH CIRCUIT | 12,151 | 11,909 | 98.0 | 242 | 2.0 |
| Alaska | 177 | 165 | 93.2 | 12 | 6.8 |
| Arizona | 4,812 | 4,790 | 99.5 | 22 | 0.5 |
| California | | | | | |
| Central | 944 | 887 | 94.0 | 57 | 6.0 |
| Eastern | 392 | 381 | 97.2 | 11 | 2.8 |
| Northern | 386 | 365 | 94.6 | 21 | 5.4 |
| Southern | 3,189 | 3,150 | 98.8 | 39 | 1.2 |
| Guam | 26 | 23 | 88.5 | 3 | 11.5 |
| Hawaii | 119 | 109 | 91.6 | 10 | 8.4 |
| Idaho | 292 | 278 | 95.2 | 14 | 4.8 |
| Montana | 369 | 358 | 97.0 | 11 | 3.0 |
| Nevada | 362 | 351 | 97.0 | 11 | 3.0 |
| Northern Mariana Islands | 25 | 24 | 96.0 | 1 | 4.0 |
| Oregon | 410 | 396 | 96.6 | 14 | 3.4 |
| Washington | | | | | |
| Eastern | 289 | 284 | 98.3 | 5 | 1.7 |
| Western | 359 | 348 | 96.9 | 11 | 3.1 |
| TENTH CIRCUIT | 4,878 | 4,756 | 97.5 | 122 | 2.5 |
| Colorado | 340 | 323 | 95.0 | 17 | 5.0 |
| Kansas | 341 | 328 | 96.2 | 13 | 3.8 |
| New Mexico | 2,006 | 1,986 | 99.0 | 20 | 1.0 |
| Oklahoma | | | | | |
| Eastern | 215 | 190 | 88.4 | 25 | 11.6 |
| Northern | 400 | 381 | 95.3 | 19 | 4.8 |
| Western | 677 | 665 | 98.2 | 12 | 1.8 |
| Utah | 761 | 750 | 98.6 | 11 | 1.4 |
| Wyoming | 138 | 133 | 96.4 | 5 | 3.6 |
| ELEVENTH CIRCUIT | 5,181 | 4,925 | 95.1 | 256 | 4.9 |
| Alabama | | | | | |
| Middle | 218 | 212 | 97.2 | 6 | 2.8 |
| Northern | 405 | 394 | 97.3 | 11 | 2.7 |
| Southern | 308 | 296 | 96.1 | 12 | 3.9 |
| Florida | | | | | |
| Middle | 1,104 | 1,025 | 92.8 | 79 | 7.2 |
| Northern | 254 | 236 | 92.9 | 18 | 7.1 |
| Southern | 1,552 | 1,465 | 94.4 | 87 | 5.6 |
| Georgia | | | | | |
| Middle | 384 | 372 | 96.9 | 12 | 3.1 |
| Northern | 585 | 561 | 95.9 | 24 | 4.1 |
| Southern | 371 | 364 | 98.1 | 7 | 1.9 |

Of the 64,124 National cases, no cases were excluded.

SOURCE:  U.S. Sentencing Commission, 2023 Datafile, USSCFY23.

## Table 3

### GUILTY PLEAS AND TRIALS BY TYPE OF CRIME
### Fiscal Year 2023

| TYPE OF CRIME | TOTAL | National PLEA N | PLEA % | National TRIAL N | TRIAL % | Southern Florida PLEA N | PLEA % | Southern Florida TRIAL N | TRIAL % |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL | 64,124 | 62,300 | 97.2 | 1,824 | 2.8 | 1,465 | 94.4 | 87 | 5.6 |
| Administration of Justice | 647 | 540 | 83.5 | 107 | 16.5 | 14 | 93.3 | 1 | 6.7 |
| Antitrust | 18 | 18 | 100.0 | 0 | 0.0 | 0 | -- | 0 | -- |
| Arson | 106 | 104 | 98.1 | 2 | 1.9 | 0 | -- | 0 | -- |
| Assault | 852 | 782 | 91.8 | 70 | 8.2 | 2 | 50.0 | 2 | 50.0 |
| Bribery/Corruption | 366 | 335 | 91.5 | 31 | 8.5 | 26 | 100.0 | 0 | 0.0 |
| Burglary/Trespass | 85 | 81 | 95.3 | 4 | 4.7 | 1 | 100.0 | 0 | 0.0 |
| Child Pornography | 1,408 | 1,367 | 97.1 | 41 | 2.9 | 46 | 93.9 | 3 | 6.1 |
| Commercialized Vice | 84 | 83 | 98.8 | 1 | 1.2 | 0 | -- | 0 | -- |
| Drug Possession | 139 | 136 | 97.8 | 3 | 2.2 | 1 | 100.0 | 0 | 0.0 |
| Drug Trafficking | 19,007 | 18,576 | 97.7 | 431 | 2.3 | 403 | 97.1 | 12 | 2.9 |
| Environmental | 160 | 155 | 96.9 | 5 | 3.1 | 17 | 94.4 | 1 | 5.6 |
| Extortion/Racketeering | 130 | 121 | 93.1 | 9 | 6.9 | 1 | 100.0 | 0 | 0.0 |
| Firearms | 8,832 | 8,615 | 97.5 | 217 | 2.5 | 162 | 93.1 | 12 | 6.9 |
| Food and Drug | 55 | 55 | 100.0 | 0 | 0.0 | 2 | 100.0 | 0 | 0.0 |
| Forgery/Counter/Copyright | 112 | 106 | 94.6 | 6 | 5.4 | 2 | 100.0 | 0 | 0.0 |
| Fraud/Theft/Embezzlement | 5,205 | 4,980 | 95.7 | 225 | 4.3 | 279 | 93.3 | 20 | 6.7 |
| Immigration | 19,226 | 19,158 | 99.6 | 68 | 0.4 | 328 | 98.8 | 4 | 1.2 |
| Individual Rights | 113 | 96 | 85.0 | 17 | 15.0 | 1 | 100.0 | 0 | 0.0 |
| Kidnapping | 151 | 126 | 83.4 | 25 | 16.6 | 3 | 50.0 | 3 | 50.0 |
| Manslaughter | 86 | 78 | 90.7 | 8 | 9.3 | 0 | -- | 0 | -- |
| Money Laundering | 1,312 | 1,202 | 91.6 | 110 | 8.4 | 63 | 90.0 | 7 | 10.0 |
| Murder | 489 | 370 | 75.7 | 119 | 24.3 | 4 | 44.4 | 5 | 55.6 |
| National Defense | 237 | 230 | 97.0 | 7 | 3.0 | 7 | 100.0 | 0 | 0.0 |
| Obscenity/Other Sex Offenses | 326 | 320 | 98.2 | 6 | 1.8 | 3 | 75.0 | 1 | 25.0 |
| Prison Offenses | 455 | 450 | 98.9 | 5 | 1.1 | 6 | 100.0 | 0 | 0.0 |
| Robbery | 1,503 | 1,422 | 94.6 | 81 | 5.4 | 38 | 84.4 | 7 | 15.6 |
| Sexual Abuse | 1,395 | 1,240 | 88.9 | 155 | 11.1 | 26 | 76.5 | 8 | 23.5 |
| Stalking/Harassing | 240 | 219 | 91.3 | 21 | 8.8 | 7 | 87.5 | 1 | 12.5 |
| Tax | 446 | 407 | 91.3 | 39 | 8.7 | 21 | 100.0 | 0 | 0.0 |
| Other | 939 | 928 | 98.8 | 11 | 1.2 | 2 | 100.0 | 0 | 0.0 |

Of the 64,124 National cases, no cases were excluded.

Of the 1,552 cases from the Southern District of Florida, no cases were excluded.

SOURCE: U.S. Sentencing Commission, 2023 Datafile, USSCFY23.

7

## Table 4

### SENTENCE TYPE BY TYPE OF CRIME
### Fiscal Year 2023

#### National

| TYPE OF CRIME | TOTAL | Prison Only | | Prison and Alternatives | | Probation and Alternatives | | Probation Only | | Fine Only | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | N | % | N | % | N | % | N | % | N | % |
| TOTAL | 64,124 | 57,579 | 89.8 | 1,689 | 2.6 | 755 | 1.2 | 3,808 | 5.9 | 293 | 0.5 |
| Administration of Justice | 647 | 483 | 74.7 | 23 | 3.6 | 30 | 4.6 | 106 | 16.4 | 5 | 0.8 |
| Antitrust | 18 | 5 | 27.8 | 4 | 22.2 | 4 | 22.2 | 5 | 27.8 | 0 | 0.0 |
| Arson | 106 | 99 | 93.4 | 3 | 2.8 | 1 | 0.9 | 3 | 2.8 | 0 | 0.0 |
| Assault | 852 | 759 | 89.1 | 29 | 3.4 | 10 | 1.2 | 48 | 5.6 | 6 | 0.7 |
| Bribery/Corruption | 366 | 259 | 70.8 | 20 | 5.5 | 22 | 6.0 | 64 | 17.5 | 1 | 0.3 |
| Burglary/Trespass | 85 | 68 | 80.0 | 1 | 1.2 | 8 | 9.4 | 8 | 9.4 | 0 | 0.0 |
| Child Pornography | 1,408 | 1,381 | 98.1 | 14 | 1.0 | 0 | 0.0 | 13 | 0.9 | 0 | 0.0 |
| Commercialized Vice | 84 | 69 | 82.1 | 4 | 4.8 | 4 | 4.8 | 7 | 8.3 | 0 | 0.0 |
| Drug Possession | 139 | 70 | 50.4 | 0 | 0.0 | 0 | 0.0 | 51 | 36.7 | 18 | 12.9 |
| Drug Trafficking | 19,007 | 17,862 | 94.0 | 613 | 3.2 | 113 | 0.6 | 417 | 2.2 | 2 | 0.0 |
| Environmental | 160 | 38 | 23.8 | 5 | 3.1 | 6 | 3.8 | 102 | 63.8 | 9 | 5.6 |
| Extortion/Racketeering | 130 | 101 | 77.7 | 5 | 3.8 | 4 | 3.1 | 20 | 15.4 | 0 | 0.0 |
| Firearms | 8,832 | 8,078 | 91.5 | 179 | 2.0 | 109 | 1.2 | 458 | 5.2 | 8 | 0.1 |
| Food and Drug | 55 | 21 | 38.2 | 1 | 1.8 | 3 | 5.5 | 28 | 50.9 | 2 | 3.6 |
| Forgery/Counter/Copyright | 112 | 74 | 66.1 | 8 | 7.1 | 5 | 4.5 | 25 | 22.3 | 0 | 0.0 |
| Fraud/Theft/Embezzlement | 5,205 | 3,656 | 70.2 | 201 | 3.9 | 229 | 4.4 | 1,076 | 20.7 | 43 | 0.8 |
| Immigration | 19,226 | 18,108 | 94.2 | 344 | 1.8 | 93 | 0.5 | 681 | 3.5 | 0 | 0.0 |
| Individual Rights | 113 | 76 | 67.3 | 4 | 3.5 | 2 | 1.8 | 31 | 27.4 | 0 | 0.0 |
| Kidnapping | 151 | 141 | 93.4 | 9 | 6.0 | 0 | 0.0 | 1 | 0.7 | 0 | 0.0 |
| Manslaughter | 86 | 82 | 95.3 | 2 | 2.3 | 0 | 0.0 | 2 | 2.3 | 0 | 0.0 |
| Money Laundering | 1,312 | 1,122 | 85.5 | 50 | 3.8 | 37 | 2.8 | 101 | 7.7 | 2 | 0.2 |
| Murder | 489 | 479 | 98.0 | 10 | 2.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| National Defense | 237 | 188 | 79.3 | 11 | 4.6 | 3 | 1.3 | 14 | 5.9 | 21 | 8.9 |
| Obscenity/Other Sex Offenses | 326 | 285 | 87.4 | 24 | 7.4 | 4 | 1.2 | 13 | 4.0 | 0 | 0.0 |
| Prison Offenses | 455 | 427 | 93.8 | 13 | 2.9 | 4 | 0.9 | 10 | 2.2 | 1 | 0.2 |
| Robbery | 1,503 | 1,450 | 96.5 | 41 | 2.7 | 0 | 0.0 | 12 | 0.8 | 0 | 0.0 |
| Sexual Abuse | 1,395 | 1,354 | 97.1 | 34 | 2.4 | 3 | 0.2 | 4 | 0.3 | 0 | 0.0 |
| Stalking/Harassing | 240 | 208 | 86.7 | 9 | 3.8 | 9 | 3.8 | 14 | 5.8 | 0 | 0.0 |
| Tax | 446 | 265 | 59.4 | 24 | 5.4 | 37 | 8.3 | 120 | 26.9 | 0 | 0.0 |
| Other | 939 | 371 | 39.5 | 4 | 0.4 | 15 | 1.6 | 374 | 39.8 | 175 | 18.6 |

Of the 64,124 National cases, no cases were excluded.

Alternatives include all cases in which sentenced individuals received conditions of confinement as described in USSG §5C1.1.

SOURCE: U.S. Sentencing Commission, 2023 Datafile, USSCFY23.

8

# Table 5

## SENTENCE TYPE BY TYPE OF CRIME
## Fiscal Year 2023

### Southern Florida

| TYPE OF CRIME | TOTAL | Prison Only | | Prison and Alternatives | | Probation and Alternatives | | Probation Only | | Fine Only | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | N | % | N | % | N | % | N | % | N | % |
| TOTAL | 1,552 | 1,421 | 91.6 | 63 | 4.1 | 29 | 1.9 | 39 | 2.5 | 0 | 0.0 |
| Administration of Justice | 15 | 13 | 86.7 | 0 | 0.0 | 0 | 0.0 | 2 | 13.3 | 0 | 0.0 |
| Antitrust | 0 | 0 | -- | 0 | -- | 0 | -- | 0 | -- | 0 | -- |
| Arson | 0 | 0 | -- | 0 | -- | 0 | -- | 0 | -- | 0 | -- |
| Assault | 4 | 3 | 75.0 | 0 | 0.0 | 0 | 0.0 | 1 | 25.0 | 0 | 0.0 |
| Bribery/Corruption | 26 | 23 | 88.5 | 1 | 3.8 | 1 | 3.8 | 1 | 3.8 | 0 | 0.0 |
| Burglary/Trespass | 1 | 0 | 0.0 | 0 | 0.0 | 1 | 100.0 | 0 | 0.0 | 0 | 0.0 |
| Child Pornography | 49 | 48 | 98.0 | 1 | 2.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Commercialized Vice | 0 | 0 | -- | 0 | -- | 0 | -- | 0 | -- | 0 | -- |
| Drug Possession | 1 | 1 | 100.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Drug Trafficking | 415 | 398 | 95.9 | 10 | 2.4 | 3 | 0.7 | 4 | 1.0 | 0 | 0.0 |
| Environmental | 18 | 10 | 55.6 | 2 | 11.1 | 0 | 0.0 | 6 | 33.3 | 0 | 0.0 |
| Extortion/Racketeering | 1 | 1 | 100.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Firearms | 174 | 166 | 95.4 | 7 | 4.0 | 0 | 0.0 | 1 | 0.6 | 0 | 0.0 |
| Food and Drug | 2 | 2 | 100.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Forgery/Counter/Copyright | 2 | 1 | 50.0 | 1 | 50.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Fraud/Theft/Embezzlement | 299 | 242 | 80.9 | 25 | 8.4 | 13 | 4.3 | 19 | 6.4 | 0 | 0.0 |
| Immigration | 332 | 327 | 98.5 | 1 | 0.3 | 2 | 0.6 | 2 | 0.6 | 0 | 0.0 |
| Individual Rights | 1 | 0 | 0.0 | 1 | 100.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Kidnapping | 6 | 5 | 83.3 | 1 | 16.7 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Manslaughter | 0 | 0 | -- | 0 | -- | 0 | -- | 0 | -- | 0 | -- |
| Money Laundering | 70 | 57 | 81.4 | 7 | 10.0 | 4 | 5.7 | 2 | 2.9 | 0 | 0.0 |
| Murder | 9 | 8 | 88.9 | 1 | 11.1 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| National Defense | 7 | 6 | 85.7 | 0 | 0.0 | 1 | 14.3 | 0 | 0.0 | 0 | 0.0 |
| Obscenity/Other Sex Offenses | 4 | 3 | 75.0 | 0 | 0.0 | 1 | 25.0 | 0 | 0.0 | 0 | 0.0 |
| Prison Offenses | 6 | 6 | 100.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Robbery | 45 | 44 | 97.8 | 1 | 2.2 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Sexual Abuse | 34 | 33 | 97.1 | 1 | 2.9 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Stalking/Harassing | 8 | 7 | 87.5 | 1 | 12.5 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Tax | 21 | 16 | 76.2 | 2 | 9.5 | 2 | 9.5 | 1 | 4.8 | 0 | 0.0 |
| Other | 2 | 1 | 50.0 | 0 | 0.0 | 1 | 50.0 | 0 | 0.0 | 0 | 0.0 |

Of the 1,552 cases from the Southern District of Florida, no cases were excluded.

Alternatives include all cases in which sentenced individuals received conditions of confinement as described in USSG §5C1.1.

SOURCE:  U.S. Sentencing Commission, 2023 Datafile, USSCFY23.

9

**Table 6**

**INCARCERATION RATE OF U.S. CITIZENS ELIGIBLE FOR NON-PRISON SENTENCES
BY TYPE OF CRIME
Fiscal Year 2023**

| | | National | | | | Southern Florida | | | |
| | | Prison Sentence | | Non-Prison Sentence | | Prison Sentence | | Non-Prison Sentence | |
| TYPE OF CRIME | TOTAL | N | % | N | % | N | % | N | % |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL | 3,529 | 1,717 | 48.7 | 1,812 | 51.3 | 39 | 50.0 | 39 | 50.0 |
| Administration of Justice | 108 | 68 | 63.0 | 40 | 37.0 | 1 | 33.3 | 2 | 66.7 |
| Antitrust | 2 | 0 | 0.0 | 2 | 100.0 | 0 | -- | 0 | -- |
| Arson | 3 | 3 | 100.0 | 0 | 0.0 | 0 | -- | 0 | -- |
| Assault | 74 | 38 | 51.4 | 36 | 48.6 | 0 | 0.0 | 1 | 100.0 |
| Bribery/Corruption | 21 | 4 | 19.0 | 17 | 81.0 | 0 | 0.0 | 2 | 100.0 |
| Burglary/Trespass | 35 | 25 | 71.4 | 10 | 28.6 | 0 | 0.0 | 1 | 100.0 |
| Child Pornography | 0 | 0 | -- | 0 | -- | 0 | -- | 0 | -- |
| Commercialized Vice | 9 | 4 | 44.4 | 5 | 55.6 | 0 | -- | 0 | -- |
| Drug Possession | 102 | 53 | 52.0 | 49 | 48.0 | 1 | 100.0 | 0 | 0.0 |
| Drug Trafficking | 265 | 175 | 66.0 | 90 | 34.0 | 5 | 45.5 | 6 | 54.5 |
| Environmental | 64 | 6 | 9.4 | 58 | 90.6 | 0 | 0.0 | 3 | 100.0 |
| Extortion/Racketeering | 11 | 3 | 27.3 | 8 | 72.7 | 0 | -- | 0 | -- |
| Firearms | 133 | 56 | 42.1 | 77 | 57.9 | 3 | 100.0 | 0 | 0.0 |
| Food and Drug | 28 | 5 | 17.9 | 23 | 82.1 | 0 | -- | 0 | -- |
| Forgery/Counter/Copyright | 20 | 7 | 35.0 | 13 | 65.0 | 0 | -- | 0 | -- |
| Fraud/Theft/Embezzlement | 1,157 | 448 | 38.7 | 709 | 61.3 | 23 | 54.8 | 19 | 45.2 |
| Immigration | 759 | 542 | 71.4 | 217 | 28.6 | 0 | 0.0 | 2 | 100.0 |
| Individual Rights | 18 | 3 | 16.7 | 15 | 83.3 | 0 | -- | 0 | -- |
| Kidnapping | 0 | 0 | -- | 0 | -- | 0 | -- | 0 | -- |
| Manslaughter | 1 | 1 | 100.0 | 0 | 0.0 | 0 | -- | 0 | -- |
| Money Laundering | 52 | 29 | 55.8 | 23 | 44.2 | 0 | 0.0 | 1 | 100.0 |
| Murder | 0 | 0 | -- | 0 | -- | 0 | -- | 0 | -- |
| National Defense | 18 | 1 | 5.6 | 17 | 94.4 | 0 | -- | 0 | -- |
| Obscenity/Other Sex Offenses | 16 | 11 | 68.8 | 5 | 31.3 | 0 | 0.0 | 1 | 100.0 |
| Prison Offenses | 145 | 133 | 91.7 | 12 | 8.3 | 3 | 100.0 | 0 | 0.0 |
| Robbery | 0 | 0 | -- | 0 | -- | 0 | -- | 0 | -- |
| Sexual Abuse | 2 | 1 | 50.0 | 1 | 50.0 | 0 | -- | 0 | -- |
| Stalking/Harassing | 24 | 20 | 83.3 | 4 | 16.7 | 3 | 100.0 | 0 | 0.0 |
| Tax | 19 | 3 | 15.8 | 16 | 84.2 | 0 | -- | 0 | -- |
| Other | 443 | 78 | 17.6 | 365 | 82.4 | 0 | 0.0 | 1 | 100.0 |

Of the 64,124 National cases, a U.S. Citizen was the sentenced individual in 42,295 cases. Of these, 38,766 cases were excluded because the sentenced individual was ineligible for a non-prison sentence.

Of the 1,552 cases from the Southern District of Florida, a U.S. Citizen was the sentenced individual in 818 cases. Of these, 740 cases were excluded because the sentenced individual was ineligible for a non-prison sentence.

SOURCE: U.S. Sentencing Commission, 2023 Datafile, USSCFY23.

## Table 7

### SENTENCE LENGTH BY TYPE OF CRIME
### Fiscal Year 2023

| TYPE OF CRIME | National | | | Southern Florida | | |
|---|---|---|---|---|---|---|
| | Mean Months | Median Months | N | Mean Months | Median Months | N |
| **TOTAL** | 52 | 24 | 64,123 | 55 | 32 | 1,552 |
| **Administration of Justice** | 16 | 10 | 647 | 13 | 8 | 15 |
| **Antitrust** | 6 | 6 | 18 | -- | -- | 0 |
| **Arson** | 58 | 57 | 106 | -- | -- | 0 |
| **Assault** | 71 | 47 | 852 | 166 | 98 | 4 |
| **Bribery/Corruption** | 21 | 14 | 366 | 25 | 24 | 26 |
| **Burglary/Trespass** | 16 | 8 | 85 | -- | -- | 1 |
| **Child Pornography** | 115 | 97 | 1,408 | 128 | 108 | 49 |
| **Commercialized Vice** | 21 | 12 | 84 | -- | -- | 0 |
| **Drug Possession** | 2 | 0 | 139 | -- | -- | 1 |
| **Drug Trafficking** | 82 | 63 | 19,007 | 80 | 70 | 415 |
| **Environmental** | 3 | 0 | 160 | 7 | 0 | 18 |
| **Extortion/Racketeering** | 32 | 24 | 130 | -- | -- | 1 |
| **Firearms** | 49 | 40 | 8,832 | 61 | 48 | 174 |
| **Food and Drug** | 10 | 0 | 55 | -- | -- | 2 |
| **Forgery/Counter/Copyright** | 18 | 12 | 112 | -- | -- | 2 |
| **Fraud/Theft/Embezzlement** | 22 | 12 | 5,205 | 28 | 24 | 299 |
| **Immigration** | 12 | 8 | 19,225 | 10 | 6 | 332 |
| **Individual Rights** | 55 | 15 | 113 | -- | -- | 1 |
| **Kidnapping** | 199 | 168 | 151 | 401 | 470 | 6 |
| **Manslaughter** | 75 | 69 | 86 | -- | -- | 0 |
| **Money Laundering** | 63 | 36 | 1,312 | 51 | 29 | 70 |
| **Murder** | 285 | 276 | 489 | 385 | 470 | 9 |
| **National Defense** | 38 | 24 | 237 | 53 | 30 | 7 |
| **Obscenity/Other Sex Offenses** | 23 | 18 | 326 | 15 | 13 | 4 |
| **Prison Offenses** | 14 | 12 | 455 | 23 | 14 | 6 |
| **Robbery** | 110 | 96 | 1,503 | 116 | 106 | 45 |
| **Sexual Abuse** | 213 | 180 | 1,395 | 201 | 180 | 34 |
| **Stalking/Harassing** | 29 | 20 | 240 | 14 | 17 | 8 |
| **Tax** | 15 | 12 | 446 | 21 | 15 | 21 |
| **Other** | 4 | 0 | 939 | -- | -- | 2 |

Of the 64,124 National cases, one case was excluded due to missing or indeterminable sentencing information.

Of the 1,552 cases from the Southern District of Florida, no cases were excluded.

Sentences of 470 months or greater (including life) and probation were included in the sentence average computations as 470 months and zero months, respectively. The information in this table includes conditions of confinement as described in USSG §5C1.1.

SOURCE: U.S. Sentencing Commission, 2023 Datafile, USSCFY23.

11

**Table 8**

### SENTENCE IMPOSED RELATIVE TO THE GUIDELINE RANGE[1]
### Fiscal Year 2023

|  | National | | Southern Florida | |
|---|---|---|---|---|
|  | N | % | N | % |
| **TOTAL CASES** | **63,812** | **100.0** | **1,514** | **100.0** |
| **SENTENCES UNDER THE GUIDELINES MANUAL** | **42,684** | **66.9** | **873** | **57.7** |
| Within Guideline Range | 27,087 | 42.4 | 745 | 49.2 |
| Upward Departure[2] | 314 | 0.5 | 4 | 0.3 |
| Downward Departure |  |  |  |  |
| §5K1.1 Substantial Assistance | 6,499 | 10.2 | 108 | 7.1 |
| §5K3.1 Early Disposition Program | 6,363 | 10.0 | 0 | 0.0 |
| Other Government Motion[3] | 1,310 | 2.1 | 4 | 0.3 |
| Non-Government Departure[4] | 1,111 | 1.7 | 12 | 0.8 |
| **VARIANCES** | **21,128** | **33.1** | **641** | **42.3** |
| Upward Variance[5] | 1,896 | 3.0 | 41 | 2.7 |
| Downward Variance |  |  |  |  |
| Government Motion[6] | 6,384 | 10.0 | 112 | 7.4 |
| Non-Government Variance[7] | 12,848 | 20.1 | 488 | 32.2 |

[1] This table reflects the 64,124 cases reported to the Commission in fiscal year 2023, 1,552 of which were from the Southern District of Florida. Of these, 312 cases nationally and 38 cases from the Southern District of Florida were excluded because information was missing from the submitted documents that prevented the comparison of the sentence and the guideline range.

[2] Cases in which the sentence imposed was above the applicable guideline range and for which the court cited a reason on Part V of the Statement of Reasons form, other than §5K1.1 or §5K3.1.

[3] Cases in which the sentence imposed was below the applicable guideline range and for which the court cited a reason on Part V of the Statement of Reasons form, other than §5K1.1 or §5K3.1, and where the prosecution initiated, proposed, or stipulated to the sentence.

[4] Cases in which the sentence imposed was below the applicable guideline range and for which the court cited a reason on Part V of the Statement of Reasons form, other than §5K1.1 or §5K3.1, and where the prosecution did not initiate, propose, or stipulate to the sentence.

[5] Cases in which the sentence imposed was above the applicable guideline range and for which the court cited a reason on Part VI of the Statement of Reasons form.

[6] Cases in which the sentence imposed was below the applicable guideline range and for which the court cited a reason on Part VI of the Statement of Reasons form, and where the prosecution initiated, proposed, or stipulated to the sentence.

[7] Cases in which the sentence imposed was below the applicable guideline range and for which the court cited a reason on Part VI of the Statement of Reasons form, or where no reason was given, and where the prosecution did not initiate, propose, or stipulate to the sentence.

SOURCE: U.S. Sentencing Commission, 2023 Datafile, USSCFY23.

12

## Table 9

## SENTENCE IMPOSED RELATIVE TO THE GUIDELINE RANGE
## IN EACH CIRCUIT AND DISTRICT[1]
### Fiscal Year 2023

| CIRCUIT | | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | UPWARD | | §5K1.1 | | §5K3.1 | | DOWNWARD | | VARIANCE | |
| District | TOTAL | N | % | N | % | N | % | N | % | N | % | N | % |
| TOTAL | 63,812 | 27,087 | 42.4 | 314 | 0.5 | 6,499 | 10.2 | 6,363 | 10.0 | 2,421 | 3.8 | 21,128 | 33.1 |
| D.C. CIRCUIT | 503 | 231 | 45.9 | 12 | 2.4 | 37 | 7.4 | 0 | 0.0 | 21 | 4.2 | 202 | 40.2 |
| District of Columbia | 503 | 231 | 45.9 | 12 | 2.4 | 37 | 7.4 | 0 | 0.0 | 21 | 4.2 | 202 | 40.2 |
| FIRST CIRCUIT | 1,947 | 712 | 36.6 | 6 | 0.3 | 178 | 9.1 | 1 | 0.1 | 126 | 6.5 | 924 | 47.5 |
| Maine | 116 | 28 | 24.1 | 1 | 0.9 | 24 | 20.7 | 0 | 0.0 | 2 | 1.7 | 61 | 52.6 |
| Massachusetts | 477 | 93 | 19.5 | 1 | 0.2 | 62 | 13.0 | 1 | 0.2 | 43 | 9.0 | 277 | 58.1 |
| New Hampshire | 158 | 33 | 20.9 | 0 | 0.0 | 20 | 12.7 | 0 | 0.0 | 8 | 5.1 | 97 | 61.4 |
| Puerto Rico | 1,090 | 541 | 49.6 | 4 | 0.4 | 67 | 6.1 | 0 | 0.0 | 69 | 6.3 | 409 | 37.5 |
| Rhode Island | 106 | 17 | 16.0 | 0 | 0.0 | 5 | 4.7 | 0 | 0.0 | 4 | 3.8 | 80 | 75.5 |
| SECOND CIRCUIT | 3,204 | 882 | 27.5 | 10 | 0.3 | 521 | 16.3 | 5 | 0.2 | 102 | 3.2 | 1,684 | 52.6 |
| Connecticut | 355 | 78 | 22.0 | 1 | 0.3 | 64 | 18.0 | 0 | 0.0 | 41 | 11.5 | 171 | 48.2 |
| New York | | | | | | | | | | | | | |
| Eastern | 709 | 159 | 22.4 | 1 | 0.1 | 138 | 19.5 | 2 | 0.3 | 36 | 5.1 | 373 | 52.6 |
| Northern | 453 | 238 | 52.5 | 3 | 0.7 | 87 | 19.2 | 2 | 0.4 | 11 | 2.4 | 112 | 24.7 |
| Southern | 1,142 | 224 | 19.6 | 1 | 0.1 | 124 | 10.9 | 1 | 0.1 | 11 | 1.0 | 781 | 68.4 |
| Western | 410 | 153 | 37.3 | 3 | 0.7 | 82 | 20.0 | 0 | 0.0 | 1 | 0.2 | 171 | 41.7 |
| Vermont | 135 | 30 | 22.2 | 1 | 0.7 | 26 | 19.3 | 0 | 0.0 | 2 | 1.5 | 76 | 56.3 |
| THIRD CIRCUIT | 2,358 | 862 | 36.6 | 9 | 0.4 | 432 | 18.3 | 8 | 0.3 | 51 | 2.2 | 996 | 42.2 |
| Delaware | 104 | 48 | 46.2 | 1 | 1.0 | 11 | 10.6 | 6 | 5.8 | 6 | 5.8 | 32 | 30.8 |
| New Jersey | 722 | 237 | 32.8 | 1 | 0.1 | 133 | 18.4 | 0 | 0.0 | 9 | 1.2 | 342 | 47.4 |
| Pennsylvania | | | | | | | | | | | | | |
| Eastern | 526 | 145 | 27.6 | 0 | 0.0 | 149 | 28.3 | 0 | 0.0 | 8 | 1.5 | 224 | 42.6 |
| Middle | 409 | 176 | 43.0 | 4 | 1.0 | 71 | 17.4 | 2 | 0.5 | 13 | 3.2 | 143 | 35.0 |
| Western | 530 | 206 | 38.9 | 2 | 0.4 | 60 | 11.3 | 0 | 0.0 | 13 | 2.5 | 249 | 47.0 |
| Virgin Islands | 67 | 50 | 74.6 | 1 | 1.5 | 8 | 11.9 | 0 | 0.0 | 2 | 3.0 | 6 | 9.0 |
| FOURTH CIRCUIT | 4,263 | 1,789 | 42.0 | 30 | 0.7 | 718 | 16.8 | 4 | 0.1 | 91 | 2.1 | 1,631 | 38.3 |
| Maryland | 484 | 120 | 24.8 | 4 | 0.8 | 99 | 20.5 | 2 | 0.4 | 26 | 5.4 | 233 | 48.1 |
| North Carolina | | | | | | | | | | | | | |
| Eastern | 825 | 434 | 52.6 | 10 | 1.2 | 240 | 29.1 | 0 | 0.0 | 5 | 0.6 | 136 | 16.5 |
| Middle | 326 | 137 | 42.0 | 4 | 1.2 | 17 | 5.2 | 0 | 0.0 | 5 | 1.5 | 163 | 50.0 |
| Western | 362 | 166 | 45.9 | 1 | 0.3 | 61 | 16.9 | 0 | 0.0 | 3 | 0.8 | 131 | 36.2 |
| South Carolina | 644 | 190 | 29.5 | 0 | 0.0 | 173 | 26.9 | 0 | 0.0 | 12 | 1.9 | 269 | 41.8 |
| Virginia | | | | | | | | | | | | | |
| Eastern | 877 | 430 | 49.0 | 7 | 0.8 | 33 | 3.8 | 2 | 0.2 | 38 | 4.3 | 367 | 41.8 |
| Western | 209 | 65 | 31.1 | 3 | 1.4 | 49 | 23.4 | 0 | 0.0 | 0 | 0.0 | 92 | 44.0 |
| West Virginia | | | | | | | | | | | | | |
| Northern | 310 | 150 | 48.4 | 1 | 0.3 | 28 | 9.0 | 0 | 0.0 | 1 | 0.3 | 130 | 41.9 |
| Southern | 226 | 97 | 42.9 | 0 | 0.0 | 18 | 8.0 | 0 | 0.0 | 1 | 0.4 | 110 | 48.7 |

13

| CIRCUIT | | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | UPWARD | | §5K1.1 | | §5K3.1 | | DOWNWARD | | VARIANCE | |
| District | TOTAL | N | % | N | % | N | % | N | % | N | % | N | % |
| **FIFTH CIRCUIT** | **17,480** | **11,170** | **63.9** | **68** | **0.4** | **1,079** | **6.2** | **917** | **5.2** | **588** | **3.4** | **3,658** | **20.9** |
| Louisiana | | | | | | | | | | | | | |
| Eastern | 331 | 168 | 50.8 | 9 | 2.7 | 66 | 19.9 | 0 | 0.0 | 5 | 1.5 | 83 | 25.1 |
| Middle | 96 | 49 | 51.0 | 0 | 0.0 | 18 | 18.8 | 0 | 0.0 | 1 | 1.0 | 28 | 29.2 |
| Western | 324 | 224 | 69.1 | 2 | 0.6 | 24 | 7.4 | 0 | 0.0 | 3 | 0.9 | 71 | 21.9 |
| Mississippi | | | | | | | | | | | | | |
| Northern | 157 | 61 | 38.9 | 2 | 1.3 | 35 | 22.3 | 0 | 0.0 | 0 | 0.0 | 59 | 37.6 |
| Southern | 372 | 232 | 62.4 | 2 | 0.5 | 48 | 12.9 | 0 | 0.0 | 3 | 0.8 | 87 | 23.4 |
| Texas | | | | | | | | | | | | | |
| Eastern | 714 | 421 | 59.0 | 9 | 1.3 | 33 | 4.6 | 0 | 0.0 | 10 | 1.4 | 241 | 33.8 |
| Northern | 1,557 | 931 | 59.8 | 10 | 0.6 | 148 | 9.5 | 0 | 0.0 | 13 | 0.8 | 455 | 29.2 |
| Southern | 6,422 | 3,417 | 53.2 | 31 | 0.5 | 408 | 6.4 | 886 | 13.8 | 449 | 7.0 | 1,231 | 19.2 |
| Western | 7,507 | 5,667 | 75.5 | 3 | 0.0 | 299 | 4.0 | 31 | 0.4 | 104 | 1.4 | 1,403 | 18.7 |
| **SIXTH CIRCUIT** | **4,586** | **1,684** | **36.7** | **19** | **0.4** | **822** | **17.9** | **10** | **0.2** | **179** | **3.9** | **1,872** | **40.8** |
| Kentucky | | | | | | | | | | | | | |
| Eastern | 444 | 220 | 49.5 | 3 | 0.7 | 90 | 20.3 | 0 | 0.0 | 6 | 1.4 | 125 | 28.2 |
| Western | 337 | 96 | 28.5 | 1 | 0.3 | 90 | 26.7 | 7 | 2.1 | 24 | 7.1 | 119 | 35.3 |
| Michigan | | | | | | | | | | | | | |
| Eastern | 694 | 225 | 32.4 | 1 | 0.1 | 65 | 9.4 | 0 | 0.0 | 14 | 2.0 | 389 | 56.1 |
| Western | 239 | 119 | 49.8 | 3 | 1.3 | 40 | 16.7 | 0 | 0.0 | 6 | 2.5 | 71 | 29.7 |
| Ohio | | | | | | | | | | | | | |
| Northern | 880 | 345 | 39.2 | 2 | 0.2 | 171 | 19.4 | 1 | 0.1 | 21 | 2.4 | 340 | 38.6 |
| Southern | 621 | 141 | 22.7 | 3 | 0.5 | 132 | 21.3 | 1 | 0.2 | 90 | 14.5 | 254 | 40.9 |
| Tennessee | | | | | | | | | | | | | |
| Eastern | 640 | 293 | 45.8 | 5 | 0.8 | 138 | 21.6 | 0 | 0.0 | 9 | 1.4 | 195 | 30.5 |
| Middle | 276 | 70 | 25.4 | 1 | 0.4 | 29 | 10.5 | 1 | 0.4 | 4 | 1.4 | 171 | 62.0 |
| Western | 455 | 175 | 38.5 | 0 | 0.0 | 67 | 14.7 | 0 | 0.0 | 5 | 1.1 | 208 | 45.7 |
| **SEVENTH CIRCUIT** | **2,267** | **755** | **33.3** | **14** | **0.6** | **231** | **10.2** | **1** | **0.0** | **80** | **3.5** | **1,186** | **52.3** |
| Illinois | | | | | | | | | | | | | |
| Central | 260 | 77 | 29.6 | 0 | 0.0 | 32 | 12.3 | 0 | 0.0 | 3 | 1.2 | 148 | 56.9 |
| Northern | 617 | 182 | 29.5 | 2 | 0.3 | 53 | 8.6 | 1 | 0.2 | 19 | 3.1 | 360 | 58.3 |
| Southern | 261 | 132 | 50.6 | 9 | 3.4 | 35 | 13.4 | 0 | 0.0 | 14 | 5.4 | 71 | 27.2 |
| Indiana | | | | | | | | | | | | | |
| Northern | 262 | 126 | 48.1 | 0 | 0.0 | 33 | 12.6 | 0 | 0.0 | 1 | 0.4 | 102 | 38.9 |
| Southern | 393 | 153 | 38.9 | 0 | 0.0 | 49 | 12.5 | 0 | 0.0 | 2 | 0.5 | 189 | 48.1 |
| Wisconsin | | | | | | | | | | | | | |
| Eastern | 328 | 50 | 15.2 | 2 | 0.6 | 23 | 7.0 | 0 | 0.0 | 4 | 1.2 | 249 | 75.9 |
| Western | 146 | 35 | 24.0 | 1 | 0.7 | 6 | 4.1 | 0 | 0.0 | 37 | 25.3 | 67 | 45.9 |
| **EIGHTH CIRCUIT** | **5,141** | **2,070** | **40.3** | **32** | **0.6** | **696** | **13.5** | **23** | **0.4** | **114** | **2.2** | **2,206** | **42.9** |
| Arkansas | | | | | | | | | | | | | |
| Eastern | 548 | 251 | 45.8 | 1 | 0.2 | 65 | 11.9 | 0 | 0.0 | 3 | 0.5 | 228 | 41.6 |
| Western | 177 | 82 | 46.3 | 0 | 0.0 | 20 | 11.3 | 0 | 0.0 | 1 | 0.6 | 74 | 41.8 |
| Iowa | | | | | | | | | | | | | |
| Northern | 338 | 169 | 50.0 | 11 | 3.3 | 63 | 18.6 | 0 | 0.0 | 5 | 1.5 | 90 | 26.6 |
| Southern | 440 | 146 | 33.2 | 2 | 0.5 | 66 | 15.0 | 0 | 0.0 | 4 | 0.9 | 222 | 50.5 |
| Minnesota | 353 | 96 | 27.2 | 1 | 0.3 | 47 | 13.3 | 2 | 0.6 | 25 | 7.1 | 182 | 51.6 |
| Missouri | | | | | | | | | | | | | |
| Eastern | 953 | 389 | 40.8 | 2 | 0.2 | 95 | 10.0 | 0 | 0.0 | 24 | 2.5 | 443 | 46.5 |
| Western | 840 | 280 | 33.3 | 1 | 0.1 | 154 | 18.3 | 0 | 0.0 | 13 | 1.5 | 392 | 46.7 |
| Nebraska | 567 | 252 | 44.4 | 0 | 0.0 | 20 | 3.5 | 17 | 3.0 | 4 | 0.7 | 274 | 48.3 |
| North Dakota | 413 | 139 | 33.7 | 6 | 1.5 | 160 | 38.7 | 3 | 0.7 | 3 | 0.7 | 102 | 24.7 |
| South Dakota | 512 | 266 | 52.0 | 8 | 1.6 | 6 | 1.2 | 1 | 0.2 | 32 | 6.3 | 199 | 38.9 |

14

| CIRCUIT District | TOTAL | WITHIN GUIDELINE RANGE | | DEPARTURE UPWARD | | §5K1.1 | | §5K3.1 | | DOWNWARD | | VARIANCE | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | N | % | N | % | N | % | N | % | N | % | N | % |
| NINTH CIRCUIT | 12,091 | 2,723 | 22.5 | 48 | 0.4 | 895 | 7.4 | 4,728 | 39.1 | 640 | 5.3 | 3,057 | 25.3 |
| Alaska | 177 | 55 | 31.1 | 0 | 0.0 | 31 | 17.5 | 0 | 0.0 | 7 | 4.0 | 84 | 47.5 |
| Arizona | 4,776 | 1,253 | 26.2 | 16 | 0.3 | 104 | 2.2 | 2,748 | 57.5 | 65 | 1.4 | 590 | 12.4 |
| California | | | | | | | | | | | | | |
| Central | 941 | 247 | 26.2 | 8 | 0.9 | 123 | 13.1 | 12 | 1.3 | 68 | 7.2 | 483 | 51.3 |
| Eastern | 383 | 158 | 41.3 | 0 | 0.0 | 76 | 19.8 | 3 | 0.8 | 7 | 1.8 | 139 | 36.3 |
| Northern | 384 | 45 | 11.7 | 3 | 0.8 | 48 | 12.5 | 2 | 0.5 | 31 | 8.1 | 255 | 66.4 |
| Southern | 3,184 | 339 | 10.6 | 13 | 0.4 | 172 | 5.4 | 1,906 | 59.9 | 428 | 13.4 | 326 | 10.2 |
| Guam | 26 | 10 | 38.5 | 0 | 0.0 | 8 | 30.8 | 0 | 0.0 | 0 | 0.0 | 8 | 30.8 |
| Hawaii | 119 | 32 | 26.9 | 0 | 0.0 | 37 | 31.1 | 0 | 0.0 | 1 | 0.8 | 49 | 41.2 |
| Idaho | 291 | 98 | 33.7 | 0 | 0.0 | 62 | 21.3 | 12 | 4.1 | 9 | 3.1 | 110 | 37.8 |
| Montana | 368 | 113 | 30.7 | 1 | 0.3 | 79 | 21.5 | 0 | 0.0 | 8 | 2.2 | 167 | 45.4 |
| Nevada | 360 | 63 | 17.5 | 1 | 0.3 | 16 | 4.4 | 41 | 11.4 | 9 | 2.5 | 230 | 63.9 |
| Northern Mariana Islands | 25 | 19 | 76.0 | 0 | 0.0 | 3 | 12.0 | 0 | 0.0 | 0 | 0.0 | 3 | 12.0 |
| Oregon | 409 | 66 | 16.1 | 2 | 0.5 | 78 | 19.1 | 0 | 0.0 | 2 | 0.5 | 261 | 63.8 |
| Washington | | | | | | | | | | | | | |
| Eastern | 289 | 103 | 35.6 | 4 | 1.4 | 46 | 15.9 | 4 | 1.4 | 3 | 1.0 | 129 | 44.6 |
| Western | 359 | 122 | 34.0 | 0 | 0.0 | 12 | 3.3 | 0 | 0.0 | 2 | 0.6 | 223 | 62.1 |
| TENTH CIRCUIT | 4,835 | 1,811 | 37.5 | 42 | 0.9 | 272 | 5.6 | 664 | 13.7 | 356 | 7.4 | 1,690 | 35.0 |
| Colorado | 328 | 97 | 29.6 | 2 | 0.6 | 66 | 20.1 | 20 | 6.1 | 4 | 1.2 | 139 | 42.4 |
| Kansas | 330 | 149 | 45.2 | 2 | 0.6 | 45 | 13.6 | 2 | 0.6 | 6 | 1.8 | 126 | 38.2 |
| New Mexico | 2,003 | 701 | 35.0 | 21 | 1.0 | 50 | 2.5 | 535 | 26.7 | 208 | 10.4 | 488 | 24.4 |
| Oklahoma | | | | | | | | | | | | | |
| Eastern | 213 | 136 | 63.8 | 3 | 1.4 | 8 | 3.8 | 0 | 0.0 | 5 | 2.3 | 61 | 28.6 |
| Northern | 398 | 207 | 52.0 | 10 | 2.5 | 31 | 7.8 | 0 | 0.0 | 100 | 25.1 | 50 | 12.6 |
| Western | 669 | 355 | 53.1 | 2 | 0.3 | 21 | 3.1 | 1 | 0.1 | 6 | 0.9 | 284 | 42.5 |
| Utah | 757 | 135 | 17.8 | 0 | 0.0 | 40 | 5.3 | 102 | 13.5 | 22 | 2.9 | 458 | 60.5 |
| Wyoming | 137 | 31 | 22.6 | 2 | 1.5 | 11 | 8.0 | 4 | 2.9 | 5 | 3.6 | 84 | 61.3 |
| ELEVENTH CIRCUIT | 5,137 | 2,398 | 46.7 | 24 | 0.5 | 618 | 12.0 | 2 | 0.0 | 73 | 1.4 | 2,022 | 39.4 |
| Alabama | | | | | | | | | | | | | |
| Middle | 218 | 79 | 36.2 | 0 | 0.0 | 29 | 13.3 | 0 | 0.0 | 5 | 2.3 | 105 | 48.2 |
| Northern | 405 | 228 | 56.3 | 1 | 0.2 | 54 | 13.3 | 0 | 0.0 | 6 | 1.5 | 116 | 28.6 |
| Southern | 308 | 154 | 50.0 | 6 | 1.9 | 36 | 11.7 | 1 | 0.3 | 8 | 2.6 | 103 | 33.4 |
| Florida | | | | | | | | | | | | | |
| Middle | 1,102 | 448 | 40.7 | 3 | 0.3 | 162 | 14.7 | 0 | 0.0 | 9 | 0.8 | 480 | 43.6 |
| Northern | 254 | 100 | 39.4 | 1 | 0.4 | 61 | 24.0 | 1 | 0.4 | 5 | 2.0 | 86 | 33.9 |
| Southern | 1,514 | 745 | 49.2 | 4 | 0.3 | 108 | 7.1 | 0 | 0.0 | 16 | 1.1 | 641 | 42.3 |
| Georgia | | | | | | | | | | | | | |
| Middle | 380 | 248 | 65.3 | 2 | 0.5 | 38 | 10.0 | 0 | 0.0 | 3 | 0.8 | 89 | 23.4 |
| Northern | 585 | 165 | 28.2 | 3 | 0.5 | 62 | 10.6 | 0 | 0.0 | 19 | 3.2 | 336 | 57.4 |
| Southern | 371 | 231 | 62.3 | 4 | 1.1 | 68 | 18.3 | 0 | 0.0 | 2 | 0.5 | 66 | 17.8 |

Of the 64,124 National cases, 312 were excluded because information was missing from the submitted documents that prevented the comparison of the sentence and the guideline range.

SOURCE:  U.S. Sentencing Commission, 2023 Datafile, USSCFY23.

15

## Table 10

## SENTENCE IMPOSED RELATIVE TO THE GUIDELINE RANGE
## BY TYPE OF CRIME
## Fiscal Year 2023

### National

| TYPE OF CRIME | TOTAL | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | UPWARD | | §5K1.1 | | §5K3.1 | | DOWNWARD | | VARIANCE | |
| | | N | % | N | % | N | % | N | % | N | % | N | % |
| Total | 63,812 | 27,087 | 42.4 | 314 | 0.5 | 6,499 | 10.2 | 6,363 | 10.0 | 2,421 | 3.8 | 21,128 | 33.1 |
| Child Pornography | 1,408 | 484 | 34.4 | 4 | 0.3 | 32 | 2.3 | 2 | 0.1 | 47 | 3.3 | 839 | 59.6 |
| Drug Trafficking | 18,999 | 5,060 | 26.6 | 59 | 0.3 | 3,947 | 20.8 | 1,238 | 6.5 | 883 | 4.6 | 7,812 | 41.1 |
| Firearms | 8,820 | 4,438 | 50.3 | 76 | 0.9 | 457 | 5.2 | 13 | 0.1 | 290 | 3.3 | 3,546 | 40.2 |
| Fraud/Theft/Embezzlement | 5,173 | 2,033 | 39.3 | 22 | 0.4 | 760 | 14.7 | 3 | 0.1 | 147 | 2.8 | 2,208 | 42.7 |
| Immigration | 19,140 | 10,769 | 56.3 | 39 | 0.2 | 192 | 1.0 | 5,076 | 26.5 | 572 | 3.0 | 2,492 | 13.0 |
| Money Laundering | 1,311 | 320 | 24.4 | 3 | 0.2 | 342 | 26.1 | 19 | 1.4 | 80 | 6.1 | 547 | 41.7 |
| Robbery | 1,501 | 597 | 39.8 | 14 | 0.9 | 174 | 11.6 | 3 | 0.2 | 51 | 3.4 | 662 | 44.1 |
| Sex Abuse | 1,393 | 538 | 38.6 | 17 | 1.2 | 72 | 5.2 | 0 | 0.0 | 74 | 5.3 | 692 | 49.7 |
| Other Miscellaneous Offenses | 6,067 | 2,848 | 46.9 | 80 | 1.3 | 523 | 8.6 | 9 | 0.1 | 277 | 4.6 | 2,330 | 38.4 |

### Southern Florida

| TYPE OF CRIME | TOTAL | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | UPWARD | | §5K1.1 | | §5K3.1 | | DOWNWARD | | VARIANCE | |
| | | N | % | N | % | N | % | N | % | N | % | N | % |
| Total | 1,514 | 745 | 49.2 | 4 | 0.3 | 108 | 7.1 | 0 | 0.0 | 16 | 1.1 | 641 | 42.3 |
| Child Pornography | 49 | 17 | 34.7 | 0 | 0.0 | 1 | 2.0 | 0 | 0.0 | 1 | 2.0 | 30 | 61.2 |
| Drug Trafficking | 414 | 140 | 33.8 | 0 | 0.0 | 33 | 8.0 | 0 | 0.0 | 3 | 0.7 | 238 | 57.5 |
| Firearms | 171 | 107 | 62.6 | 1 | 0.6 | 2 | 1.2 | 0 | 0.0 | 1 | 0.6 | 60 | 35.1 |
| Fraud/Theft/Embezzlement | 297 | 117 | 39.4 | 0 | 0.0 | 35 | 11.8 | 0 | 0.0 | 3 | 1.0 | 142 | 47.8 |
| Immigration | 305 | 235 | 77.0 | 0 | 0.0 | 6 | 2.0 | 0 | 0.0 | 1 | 0.3 | 63 | 20.7 |
| Money Laundering | 70 | 20 | 28.6 | 0 | 0.0 | 13 | 18.6 | 0 | 0.0 | 4 | 5.7 | 33 | 47.1 |
| Robbery | 45 | 30 | 66.7 | 2 | 4.4 | 1 | 2.2 | 0 | 0.0 | 0 | 0.0 | 12 | 26.7 |
| Sex Abuse | 34 | 15 | 44.1 | 0 | 0.0 | 1 | 2.9 | 0 | 0.0 | 1 | 2.9 | 17 | 50.0 |
| Other Miscellaneous Offenses | 129 | 64 | 49.6 | 1 | 0.8 | 16 | 12.4 | 0 | 0.0 | 2 | 1.6 | 46 | 35.7 |

Of the 64,124 National cases, 312 were excluded because information was missing from the submitted documents that prevented the comparison of the sentence and the guideline range.

Of the 1,552 cases from the Southern District of Florida, 38 cases were excluded because information was missing from the submitted documents that prevented the comparison of the sentence and the guideline range.

SOURCE: U.S. Sentencing Commission, 2023 Datafile, USSCFY23.