## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-CR-20426

**UNITED STATES OF AMERICA**

**Plaintiff,**

   **vs.**

**CHRISTIAN MURILLO,**
**Defendant.**

_____/

### SENTENCING MERMORANDUM AND
### INCORPORATED MOTION FOR DOWNWARD VARIANCE

Christian Murillo submits this Sentencing Memorandum and Incorporated Motion for Downward Variance in support of a sentence well below the guidelines range.

### INTRODUCTION

Mr. Murillo pleaded guilty, fully accepts responsibility for his participation in the charged offense, understands and acknowledges the seriousness of this offense and has demonstrated deep remorse for putting himself in this position. When the unique facts of this case, Mr. Murillo's personal history and characteristics, and the circumstances attendant to Mr. Murillo's arrest and detention are all taken together, a sentence far below that suggested by the advisory guidelines is appropriate.

1

Such a sentence would be sufficient, but not greater than necessary to vindicate the sentencing imperatives of 18 U.S.C. § 3553(a). *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007).  In other words, our proposed sentence would be sufficient to punish Mr. Murillo, deter similar conduct, and serve the purposes of the applicable statutes and Sentencing Guidelines.  Accordingly, the Court should (and can) vary downward from the applicable guideline range based on the specific circumstances set forth in this Sentencing Memorandum.[1]

**THE GUIDELINES**

On October 2, 2024, Probation filed the initial Presentence Investigation Report ("PSI") in Mr. Murillo's case.  [D.E. 62].  On October 16, 2024, Mr. Murillo filed objections to the PSI, [D.E. 70], which are more fully set forth below.  On October 30, 2024, Probation filed an addendum to the PSI declining to make any changes in response to Mr. Murillo's objections.  [D.E. 79].

I.      **Objection to Recommended Guidelines Computation (Paragraphs 17-28)**

Mr. Murillo objects to Paragraphs 17-28, which contain the recommended guideline computations, and would result in a Total Offense Level of 33, Criminal History I, and  an advisory guideline imprisonment range of 135 to 168 months.  [See PSI at pp. 6-7, ¶¶ 17-28].  Mr. Murrillo objects to the recommended computation and resulting Total Offense Level.

---

[1] As the Court is aware, the advisory Guideline range is but one factor to be considered in determining a sentence that is "sufficient, but not greater than necessary." See *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting § 3553(a))

The appropriate guideline computation should be as follows:

**Base Offense Level (USSG § 2D1.1(a)(5) and (c)(2))**
360 kilograms of cocaine:                                                                                  36

**Decrease in Base Offense Level (USSG 2D1.1(a)(5)(B)(ii))**
Base offense level adjustment based on mitigating role adjustment                     **-3**

**Adjustment for Role in the Offense (USSG § 3B1.2)**
Mitigating role adjustment for being a minor participant:                                    **-2**

**Adjustment for Obstruction of Justice (USSG § 3C1.2)**
No adjustment for being shot at                                                                           **0**

**Chapter Four Adjustment (USSG § 4C1.1(a) and (b))**
Meets all criteria under ((a)(1)-(10)) Zero-Point Offender adjustment:                **-2**

**Safety Valve (USSG § 5C1.2(a))**
Meets all criteria of subdivision (5) to qualify for Safety Valve:                          **-2**

**Acceptance of Responsibility (USSG § 3E1.1)**
Clearly demonstrated acceptance of responsibility and timely notification:          **-3**

**Total Offense Level:**                                                                                       **24**

Accordingly, the guidelines computations should result in a Total Offense Level of 24, Criminal History I, and an advisory guideline imprisonment range of 51 to 63 months.

II.   **Objection to Failure to Apply Minor Role Adjustment (Paragraph 11)**

Mr. Murillo objects to the role assessment in paragraph 11 for recommending "Neither an aggravating nor a mitigating role…"  However, the evidence as to Mr. Murillo and the totality of the circumstances surrounding the offense demonstrate Mr. Murillo's limited

role in the offense, warranting the application of a mitigating role for being a minor participant. See *U.S.S. G. § 3B1.2.*

Application Note 3(C) to U.S.S.G. § 3B1.2 makes it clear that a mitigating role reduction "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of a particular case." *U.S.S.G. § 3B1.2, Application Note 3(C).*

In deciding whether to apply an adjustment, the court should consider the following non-exhaustive list of factors: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (v) the degree to which the defendant stood to benefit from the criminal activity.  See U.S.S.G. § 3B1.2, n. 3; see also *United States v. Monzo*, 852 F.3d 1343, 1346 (11th Cir. 2017) (providing guidance on minor roll assessments as to drug couriers that included a list of non-exhaustive factors such as: the amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution).

Here, Mr. Murillo was a crew member on a small, rudimentary go-fast vessel (GFV) that was intercepted by the United States Coast Guard ("USCG") near the Dominican Republic with 360 kilograms of cocaine on board.   There is no evidence he knew the other two crew members prior to boarding the vessel.  There is no evidence that he ever exercised control over the vessel or the narcotics.   There is no evidence he had anything to do with planning the voyage, loading the vessel or had anything to do with decision-making before, during or after the voyage.  There is no evidence he knew who, when or how the narcotics were manufactured.  There is no evidence he knew who put the narcotics on the vessel or when they were put on the vessel.  There is no evidence he knew to whom the narcotics belonged, or to whom the narcotics were going.  There is no evidence that he knew or understood what was happening with the narcotics after the voyage or stood to gain anything post-voyage.  See *United States v. Rodriguez*, 44 F.4th 1229, 1234 (9th Cir. 2022) (Holding that in assessing whether to apply a minor role adjustment, the "average participant" refers to "the mathematical average," and thus even participants that the district court believes were "leaders or organizers or who were otherwise highly culpable must be included in the calculation. ").

For these reasons, Mr. Murillo should receive a minor role adjustment.  In the end, he "is less culpable than most other participants, but [his] role could not be described as minimal." *United States v. Lormil,* 551 Fed. Appx. 542, 544 (11th Cir. 2014).

### Objection to Reckless Endangerment Adjustment (Paragraph 14)

Mr. Murillo objects to the Obstruction of Justice/Reckless Endangerment enhancement in paragraph 14, which alleges that "[t]he defendants recklessly created a substantial risk of death or serious bodily injury to another person" because "[t]he GFV refused to stop causing the crew of the helicopter to employ warning shots to make the GFV stop." (PSI at p. 5, ¶ 14)

First, Mr. Murillo objects to the notion that, by being *shot at* in the open ocean, he – and not the people that shot at him – recklessly created a substantial risk of death or seriously bodily injury to another person.   The inapplicability of this adjustment under the circumstances of this case cannot be overstated.

Second, there is no evidence that Mr. Murillo had any control over the GFV.  There are no indications that he thought about fleeing, had the ability to flee, or did flee.

Third, there is no evidence that there was a clear command to "stop" by law enforcement (e.g., lights and sirens, loud-speaker commands, attempts to block travel) prior to shooting warning shots, or that there was a deliberate effort by the GFV to evade (e.g., aggressive maneuvering, sudden acceleration of speed, attempt or ability to hide) -- much less evidence of doing so recklessly – much, much less of doing so in a way that presented a risk to (really) anyone in the open ocean. *Cf. U.S. v. Suarez*, 601 F.3d 1202, 1220 (11th Cir. 2010) (enhancement for endangerment during flight under § 3C1.2 was appropriate because the Defendant/Captain led the Coast Guard on a two-hour high-speed chase in the darkness.); *United States v. Hernandez*, 864 F.3d 1292, 1309 (11th Cir.

2017) (Defendant qualified for 3C1.2 enhancement because as captain he oversaw "aggressive maneuvers in response to the Coast Guard's approach and orders to halt" . . . and evidence established that "the boat maneuvered 'aggressively' and refused to stop, requiring the Coast Guard helicopter to move close to the vessel in order to follow it and fire warning shots.").

### III.   Objection for Failure to Apply Safety Valve Adjustments (Paragraph 16)

Mr. Murillo objects to paragraph 16 and the assessment that he does not qualify for the Safety Valve Adjustment under U.S.S.G. § 5C1.2.  The PSI mistakenly asserts that, according to AUSA Yvonne Rodriguez-Shack, Mr. Murillo has not provided a safety valve statement detailing his involvement in the offense.  The Government has since confirmed that Mr. Murillo (and his two co-defendants) provided a safety valve statement with the signing of the factual proffer.[2]  [D.E. 83]. Accordingly, this objection is without opposition by the government. [Id.].

### MEMORANDUM OF LAW AND ARGUMENTS

It is well established that a sentencing court "may not presume that the Guideline range is reasonable," but rather "must make an individualized assessment based on the facts presented." *Gall v. United States,* 552 U.S. 38, 50 (2007). The Gall Court specifically

---

[2] Mr. Murillo qualifies for Safety Valve in every other respect, s*ee* 18 USC § 3553(f), because (1) he has less than 4 criminal history points; (2) he has no prior 3-point offense or prior 2-point violent offense; (3) he did not use violence or threats of violence, possess a firearm in connection with the offense, and the offense result in death or serious bodily injury to any person; (4) he was not an organizer, leader, manager or supervisor of others.

rejected the use of rigid mathematical formulas to determine whether a variance from the Guidelines' sentence range is justified. *Id.* at 47. The Court also rejected the idea that "extraordinary circumstances" are required to justify a sentence outside the Guidelines' advisory range. *Id.*

Accordingly, after calculating the proper offense level under the Guidelines and giving the government and the defendant the opportunity to argue for the sentence they believe to be appropriate, the district judge must consider each of the § 3553(a) factors and "tailor the sentence" to fit the circumstances of the case. *United States v. Booker*, 543 U.S. 220, 245 (2005). The import of Booker is that "sentencing judges have broad discretion to impose a non-guideline sentence by weighing the factors under § 3553(a)." *United States v. Robertson*, 662 F.3d 871, 875 (7th Cir. 2011); *see also United States v. Gomez*, 955 F.3d 1250, 1255 (11th Cir. 2020) ("failing to consider the 18 U.S.C. 3553(a) factors" would give rise to "significant procedural error"). Moreover, the Court must fashion the ***least restrictive sentence*** that vindicates the sentencing imperatives of 18 U.S.C. § 3553(a)(2). See *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Section 3553(a) provides:

(a)     The court shall impose a sentence ***sufficient, but not greater than necessary***, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature of the circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(5) any pertinent policy statements—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code . . . .

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Application of the § 3553(a) factors allow a sentencing court "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 131 S.Ct. 1229, 1239-40 (2011) (internal quotations and citations omitted).  As applied to this case, these factors urge a sentence well below that urged by the Sentencing Guidelines, which would be "sufficient, but not greater than necessary, to accomplish the sentencing goals advanced." *Kimbrough*, 552 U.S. at 111.

## I.    **3553 FACTORS**

### *A. Nature of the Offense and Defendant History and Characteristics*:

Count 1 of the Indictment in this case charges the Defendant and two co-defendants with a conspiracy to possess five (5) kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of Title 46 United States Code § 70503(a)(1) and § 70506(b). Count 2 charges Mr. Murillo and two co-defendants with possession with intent to distribute five (5) kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States in violation of Title 46 United States Code § 70503(a)(1). The summary of the facts regarding the offense are set forth in the factual proffer, [D.E. 44], and are also set forth in PSI at paragraphs 5-10. [D.E. 62]

It is well established that a sentencing court "may not presume that the Guideline range is reasonable," but rather "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). The Gall Court specifically rejected the use of rigid mathematical formulas to determine whether a variance from the Guidelines' sentence range is justified. *Id.* at 47. The Court also rejected the idea that "extraordinary circumstances" are required to justify a sentence outside the Guidelines' advisory range. *Id.*  Mr. Murillo respectfully requests that this court consider his *actual* role in the offense, which is incompatible with the elevated guidelines range.

Mr. Murillo is a first-time offender who has accepted responsibility for his role in this offense.  His actual, individualized conduct is inconsistent with a drug dealer involved

or even capable of consummating the kind of narcotics in the kinds of quantities that affect the guidelines.

Until this offense, Mr. Murillo worked as a barber and led a law-abiding life. He comes from an economically and socially depressed background in Bucaramanga, Colombia. [PSI at ¶ 36]. He had to work at a young age to help provide for his family and for them to have enough to eat. [Id. at ¶ 39]. He grew up in a concrete home with sand as a floor and shared the three-bedroom home with his mother, sibling, aunt and cousin. [Id.]. But although Mr. Murillo grew up very poor, he had the essentials such as food, running water and electricity. [Id.]. More importantly, he had and continues to have the love and the support of his mother, with whom he has a very close relationship. [Id.].

Mr. Murillo has lasting physical and emotional scars from an accident he was in at the age of seven. [Id. at ¶ 38]. While running an errand with a friend, he was run over by a horse carrying cargo. [Id.]. Mr. Murillo fractured his mandible, his teeth needed to be replaced, and he injured his right ear. [Id.]. He spent months in the hospital and took a year to recover. The friend that was with him died.

### B. Rehabilitation and Deterrence:

A sentence below the guidelines is sufficient, but not greater than necessary, for Mr. Murillo's rehabilitation. He is a first-time offender and will certainly be deported when he has completed his sentence. Mr. Murillo's acceptance of responsibility, remorse for his

actions and lack of criminal history speak directly to his rehabilitation and weigh strongly in his favor.  He has the love an support of his family in Colombia.

As to specific deterrence, a lengthy term of imprisonment is not necessary to protect society from Mr. Murillo.  He is not a US resident or citizen and will, upon release, be transferred to ICE custody to be processed for deportation. There, he likely will spend many additional months in custody until ICE receives the necessary travel documents and processes his deportation.  For these reasons, it is extremely unlikely that Mr. Murillo will ever commit another crime.  See *United States v. Morales-Uribe*, 470 F.3d 1282, 1287 (8th Cir. 2006) ("[T]he need to protect the public from a defendant may be reduced in a case where, upon immediate release from incarceration, the Government will deport the defendant.").

General deterrence is also satisfied by a sentence well below the guidelines.  "General Deterrence" aims to deter *others* from committing crimes. The instant offense is a serious crime, no doubt, but sentencing Mr. Murillo to a lengthy prison term is not necessary for purposes of general deterrence. He is not a high-profile defendant who lived a lavish lifestyle or made a living from illicit activity.  The public is, therefore, unlikely to see the sentence we propose as lenient treatment versus that of a lengthy prison sentence.

### C. Retribution and Policy Statements:

Although retribution is a statutory factor under §3553(a), the overriding aim of sentencing principles set forth in statutes and reported cases, is for the Court to achieve a

sentence "sufficient but not greater than necessary." *See United States v. Adelson, 441 F.Supp. 2d 506, 515 (SDNY 2006) ("We* are aware of no empirical evidence or studies indicating that a long prison sentence is necessary to achieve the retributive and general deterrence objectives applicable to a case like this one").

Title 18 U.S.C. §3553(a) expressly dictates that "[t]he Court shall impose a sentence sufficient, **but not greater than necessary**, to comply with the purposes set forth in this subsection." *(emphasis added).* As Judge Rakoff pointed out in *Adelson.* the operative word in this congressional mandate, is "necessary." *441 F.Supp.2d at 515.* Under Factor 3 in §3553(a), Congress directs the Court to consider a wide range of alternatives to imprisonment if the availability of those alternatives would render a prison sentence 'unnecessary."

## D. *Advisory Guidelines and Policy Statements:*

The PSR finds Mr. Murillo's advisory guideline range is a Total Offense Level of 33, Criminal History I, and a guideline imprisonment range of 135 to 168 months. For reasons set forth throughout this Sentencing Memorandum, Mr. Murillo respectfully submits that this recommended guideline range is incorrectly calculated and that it overrepresents his individual culpability. Accordingly, a sentence below the guidelines we propose (Total Offense Level 24) would be a reasonable and appropriate sentence.

## E. *Avoiding Disparity with Similar Offenders:*

13

Section 3553(a)(6) is concerned with unwarranted disparities in sentences among federal defendants. *See United States v. Willis*, 139 F.3d 811, 812 (11th Cir. 1998) (per curium); *United States v. Clark*, 434 F.3d 684, 687 (4th Cir. 2006) ("The sole concern of section 3553(a)(6) is with sentencing disparities among federal defendants.") (emphasis omitted). One of the purposes of the Sentencing Commission, and therefore the Sentencing Guidelines, is to "provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct. . . ." 28 U.S.C. § 991(b)(1)(B); *see also U.S. v. Docampo*, 573 F.3d 1091, 1102 (11th Cir. 2009).

<u>**Additional Grounds for a Variance**</u>

**I.     <u>Rule 5 Violation</u>**

An additional basis on which the Court can and should vary downward, is the government's violation of Rule 5.

After an evidentiary hearing and considering the arguments of the parties, this Court determined that the Government's delay in presenting the defendants for a total of 16 days after their interdiction at interdiction on the high seas was unnecessary and unreasonable and a violation of Rule 5 of the Federal Rules of Criminal Procedure. [See Order on Joint Motion to Dismiss the Indictment, D.E. 38 at pp. 16-22]. However, the Court found that suppression – not dismissal – was the only remedy available to the Court to address this

violation. [Id. at p. 22]. Because no evidence was gathered during the delay, suppression as a remedy was "an empty one[.]" [Id.].

This does not mean the Court cannot craft some remedy now, by accounting for this violation in a downward variance. One thing the Court's sentence must do is promote respect for the law. See 18 U.S.C. § 3553(a)(2)(A). Mr. Murillo is going to prison as a consequence of failing to respect the law, sending a message to him and others that courts will promote respect for the laws of the United States. Indeed, he is going to prison notwithstanding the fact that the drugs being trafficked neither originated in nor were destined to the United States; the defendants were interdicted in International waters 200 miles off the coast of the foreign country to which they were headed; the defendants were interdicted 1100 miles from the coast of Miami -- where they are now being prosecuted.

The Court made several observations that demonstrated the depth of the Government's failure to respect Rule 5 safeguards. For example, the Court observed that "the fact that these individuals are in custody should prompt diligent action." [Order on Joint Motion to Dismiss the Indictment, D.E. 38 at p. 22]. However, the defendants here, were "in a holding pattern for nearly a week waiting for DOJ to make a routine decision regarding the judicial district in which the case would be prosecuted." (See Order on Joint Motion to Dismiss the Indictment, D.E. 38 at p. 22.) Additionally, the Court found "troubling" the U.S.S.G. "policy of avoiding United States' territorial waters while defendants in these interdiction cases are moved from cutter to cutter[.]" [D.E. at p. 21]. As the Court is aware,

15

this deliberate indifference to the procedural safeguards set forth in Rule 5 is not unique to this case, but just another example of what happens – without much consequence -- in interdiction cases.  However, these failures to respect Rule 5 have not yet seen any remedy.

A downward variance would serve as an acknowledgment of the Government's failure to adhere to established legal standards, the harm suffered by the defendants as a result and would promote respect for the law by affirming that such procedural violations will not be overlooked or ignored.

II.    **Deportation**

Immediately after serving his sentence, Mr. Murillo will be transferred to immigration authorities.  He will remain in custody pending deportation.  These circumstances present an additional basis on which this Court can and should vary downward. See *United States v. Thavaraja,* 740 F.3d 253, 263 (2d Cir. 2014) (court may account for "uncertainties presented by the prospect of removal proceedings and the impact deportation will have on the defendant and his family"); *United States v. Flores-Olague*, 717 F.3d 526, 535 (7th Cir. 2013) ("A sentencing court is well within its prerogatives and responsibilities in discussing a defendant's status as a deportable alien."); *United States v. Morales-Uribe*, 470 F.3d 1282, 1287 (8th Cir. 2006) ("[T]he need to protect the public from a defendant may be reduced in a case where, upon immediate release from incarceration, the Government will deport the defendant.")

16

Accordingly, Christian Murillo submits this Sentencing Memorandum and Incorporated

Motion for Downward Variance in support of a sentence well below the guidelines range.

Respectfully submitted,

BY:   BEATON LAW FIRM, P.A.

*s/ Marcos Beaton Jr.*
**Marcos Beaton, Jr.**
**Florida Bar No. 573787**
**2525 Ponce De Leon Blvd, Suite 300**
**Coral Gables, Florida 33134**
**Tel. (305) 478-1991**
**Email: mbeaton@beatonlawfirm.com**

## CERTIFICATE OF SERVICE

I HEREBY certify that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

*s/ Marcos Beaton Jr.*
**Marcos Beaton, Jr.**