UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cr-20426-BECERRA

UNITED STATES OF AMERICA,

     Plaintiff,

v.

YORKEY DE LA CRUZ FELIZ,

     Defendant

_____/

## **<u>SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE</u>**

Yorkey de la Cruz Feliz is a 33-year-old barber from the Dominican Republic. He is a doting father, attending parent-teacher conferences and providing both emotional and financial support for his two children as well as his nieces and nephews. He is a loving brother and son, described by his sister Jesica Feliz as a protector and provider for his siblings and his mother. And, until October 22, 2023, he had never been arrested for or charged with any misconduct. He prided himself on being a hard-working family man.

There is no question that the decisions that landed Mr. De la Cruz Feliz in front of Your Honor on this case represent a grave error in judgment, one which Mr. De la Cruz Feliz deeply regrets and wishes he could change. But, as his criminal history shows, that poor decision was an aberration, and a mistake he will not repeat. Both the sentencing guidelines and relevant statutes recognize that, in some cases, people's humanity and individual life circumstances lead to bad decisions which, while deserving of punishment, warrant consideration at the sentencing stage. *See*

1

*Gall v. United States*, 552 U.S. 38, 50–51 (2007); 18 U.S.C. § 3553(a).  Such is the case here, and Mr. De La Cruz Feliz humbly asks that the Court take his mitigating circumstances into account and grant a downward variance, imposing a sentence below the applicable guidelines range.

**THE ADVISORY SENTENCING GUIDELINES RANGE**

As set out in Mr. De la Cruz Feliz's Objections to the Presentence Investigation Report ("PSI"), the applicable advisory guidelines range in this case is 51–63 months imprisonment (based on a Total Offense Level of 24 and a Criminal History Category of I, since he has zero criminal history points).  (DE 73).  Specifically, that calculation is as follows:

| Base Offense Level | 33 | U.S.S.G § 2D1.1(a)(5) |
|---|---|---|
| Safety Valve | -2 | U.S.S.G. §§ 5C1.2; 2D1.1(b)(18) |
| Minor Role | -2 | U.S.S.G. § 3B1.2(b) |
| Zero Point Offender | -2 | U.S.S.G § 4C1.1 |
| Acceptance of Responsibility | -3 | U.S.S.G § 3E1.1 |
| **TOTAL OFFENSE LEVEL** | **24** | |

0 Criminal History Points = **Criminal History Category I**

Notably, because the government conceded in its PSI objections that Mr. De la Cruz Feliz both qualifies for safety valve and does not qualify for the reckless endangerment enhancement given the specific facts of this case, the only outstanding Guidelines dispute is the applicability of the Minor Role Reduction.  (*See* DE 83).[1] For all the reasons set forth in the PSI Objections, that reduction should apply here,

---

[1]     Mr. De la Cruz Feliz also renews all prior objections to the Guidelines calculation in the Final PSI (DE 78), as set forth in DE 73.

and the Court should find that the starting advisory Guidelines range is 51–63 months imprisonment.

## BASIS FOR A VARIANCE AND §3553 (a) FACTORS

At sentencing, courts are tasked with imposing a sentence that is "sufficient, but not greater than necessary," to achieve the ends of sentencing. That determination is based on consideration of the factors outlined in 18 U.S.C. § 3553(a) and an "individualized assessment" of the facts presented in each case. *See Gall*, 552 U.S. at 50. For the reasons explained below, the § 3553(a) factors militate in favor of a lower sentence for Mr. De la Cruz Feliz.

1. ### *Nature and Circumstances of Offense & History and Characteristics of Defendant*

Mr. De la Cruz Feliz was born in Barahona, Dominican Republic. Though he was from a lower-income family, he always had the essentials, like food, running water, and electricity. He was able to attend school, and even play basketball. Still his childhood was difficult, emotionally. Both his mother and his father left the Dominican Republic when he was young, and he was raised by his maternal grandparents. He was also deeply affected by the loss of his stepfather in his early teens, and began struggling with mental health issues like depression. As his sister, Jesica Feliz, explains in her letter to the Court, Mr. De la Cruz Feliz has experienced trauma that affects him to this day, and he has always felt an obligation to support and care for his loved ones. *See* Exhibit A – Letter from Sister. That is part of what led to the poor decisions underlying this case, and what made men like Mr. De la

3

Cruz Feliz and his co-defendants targets to the individuals who solicited their involvement in this drug conspiracy.

The circumstances of Mr. De la Cruz Feliz's arrest and detention on various cutters under the control of the United States Coast Guard ("USCG") are also highly relevant here.  As the Court heard in detail at the March 25, 2024, hearing on Mr. De la Cruz Feliz's Motion to Dismiss (DE 15; DE 26), the defendants in this case were held at sea for over two-and-a-half weeks before being presented in front of a magistrate judge.  The government's witness explained at that hearing that the reason for that delay—during which time Mr. De la Cruz Feliz and his co-defendants were shackled to the deck of a ship, protected from the elements only by a tarp overhead—was that the USCG was first awaiting disposition, or the charging decision, from the government, and then waiting until the relevant agents were available for the handoff.  (*See* DE 38:3, 6, 19–20).  The USCG Lieutenant  further explained that, during that time, it is the USCG's policy to avoid United States territorial waters, "to avoid the constitutional rights kicking in," meaning the requirement that defendants be presented in front of a magistrate judge within 72 hours.   (DE 26:37–38; DE 38:21).   After a full evidentiary hearing, the Court determined that the delay in this case was unreasonable, and that the government had violated Rule 5(a).  (DE 38:22–23).  Nonetheless, the Court found that dismissal of the indictment was not the appropriate remedy, as the case law only permitted suppression of evidence as a result of a Rule 5 violation.  (DE 38:24).

4

But even if that were true in the pre-plea posture, § 3553(a) permits courts to broadly consider the circumstances of the offense when fashioning the appropriate sentence, including this type of post-arrest conduct. As such, the undue delay in presentment and the circumstances in which Mr. De la Cruz Feliz and his co-defendants were held during that time, is an additional basis for a modest downward variance in this case.

2. ***Deterrence, Just Punishment, & Respect for the Law***

In addition to contextualizing Mr. De la Cruz Feliz's participation in the offense at issue, his compelling personal circumstances also speak to the reduced need for deterrence. First, Mr. De la Cruz Feliz's poor decision to take part in this conduct was an aberration, completely out of character and driven by financial struggles and perceived family pressures that clouded his judgment. For someone in Mr. De la Cruz Feliz's position, who has never been in trouble before, any punishment will act as severe deterrence.

Second, the absence of any prior criminal history is, in and of itself, a strong indicator of a low recidivism risk. As studies conducted by the Sentencing Commission have found, defendants with zero criminal history points have "considerably lower recidivism rates than other offenders," including other offenders with a criminal history category of I. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federaloffenders-released -2010). In fact, that study found that criminal history category I has the largest variation in the likelihood of rearrest as compared to any other criminal history

category, determining that zero-point offenders were almost half as likely as one-point offenders to recidivate (26.8% compared to 42.3%). *Id.*

Mr. De la Cruz Feliz has no status in the United States, and is subject to removal upon completing his sentence, so he also poses no danger to the public upon his release. Additionally, given the Guidelines applicable to this case, any sentence Mr. De la Cruz Feliz receives—including a below-Guidelines sentence resulting from the modest variance requested here—will be significant punishment for his misconduct, and will have both additional deterrent effect and provide just punishment.

### 3. *Unwarranted Sentencing Disparities*

The charges in this case—namely drug trafficking charges brought under 46 U.S.C. § 70503(a)(1) & 70506(b), also known as the Maritime Drug Law Enforcement Act ("MDLEA")—are familiar to judges in this district. These MDLEA cases nearly always involve similar defendants, individuals who have little or no criminal history, who are socioeconomically depressed, who receive relatively little in compensation for transporting the drugs at issue, and who are targeted for that reason. And because of the role they play in the larger drug trafficking organization, judges often give either substantial role reductions or variances to account for the mitigating circumstances these defendants present. *See, e.g., United States v. Hernandez-Olaya,* Case No. 21-CR-20438-BB (involving 798 kilograms of cocaine and a sentence of 70 months later reduced to 57 months based on the Guidelines Amendments); *United States v. Epieyu,* Case No. 22-cr-20014-DPG (involving 1486 kilograms of cocaine and

a sentence of 70 months later reduced to 57 months based on the Guidelines Amendments); *United States v. Olaya Grueso*, Case No. 21-cr-20486-DPG (involving 964 kilograms of cocaine and a sentence of 78 months later reduced to 63 months based on the Guidelines Amendments); *United States v. Vilorio-Pichardo*, Case No. 23-cr-20077-JEM (involving 375 kilograms of cocaine and a sentence of 72 months; *see also United States v. Anchundia Saltos*, Case No. 17-cr-20568-FAM (imposing a sentence of 60 months); *United States v. Calderon*, Case No. 17-cr-20252-MGC (involving 740 kilograms of cocaine and a sentence of 59 months). Though Mr. De la Cruz Feliz will not repeat all of the reasons that his comparative culpability similarly warrants a reduced sentence here (*see* DE 73:4–7), it is important to contextualize his conduct among similarly situated defendants to avoid unwarranted sentencing disparities, as § 3553(a) instructs.

Finally, the data from the United States Sentencing Commission's Judicial Sentencing Information ("JSIN") portal supports the requested variance. As that data shows, between 2019 and 2023, 41% of the cases involving defendants sentenced under U.S.S.G. § 2D1.1 for powder cocaine, with a total offense level of 24 and a Criminal History Category of I resulted in a downward variance (excluding those who received reductions under §5K1.1). *See JSIN Data* available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard. Additionally, that data shows that the average sentence for that group of defendants was 43 months, and the median sentence was 48 months. As such, granting the requested variance in this case would create unwarranted sentencing disparities, but would instead avoid them.

## CONCLUSION

Mr. De la Cruz Feliz made a terrible mistake when he agreed to transport the drugs at issue in this case for money.  He has pleaded guilty to that conduct, admitted what he did, and is deserving of severe punishment for that lapse in judgment. Nonetheless, courts may not just "presume that the Guidelines range is reasonable" because, as both § 3553(a) and the Guidelines themselves acknowledge, the calculated sentencing range does not always properly weigh the specific nuances of an individual case, and must be considered in the broader context of the individual. Courts must therefore look at all of the facts surrounding the criminal conduct at issue and must treat "every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *See Gall*, 552 U.S. at 51 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

In Mr. De la Cruz Feliz's case, that unique constellation of facts warrants a modest variance.  As such, he asks that this Court grant him such a variance, and impose a below-Guidelines sentence in this case.

Respectfully submitted,

**HECTOR DOPICO**
**FEDERAL PUBLIC DEFENDER**

BY:    *s/Marisa R.  Taney*
Marisa R.  Taney
Assistant Federal Public Defender
Florida Bar No.: A5502943
150 W.  Flagler Street, Suite 1700
Miami, Florida 33130
Tel: (305) 530-7000
Email: marisa_taney@fd.org

8

## CERTIFICATE OF SERVICE

I HEREBY certify that on **November 4, 2024**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_/s/ Marisa Taney_____
Marisa Taney, AFPD

9

**<u>EXHIBIT A – Letter from Sister (Jesica Feliz)</u>**

Dear Honorable Judge Becerra –

My name is Jesica Feliz. I am Yorky's sister. My brother Yorky is my mother's 3rd child. Today I write this letter to supplicate that you take into consideration my brother's good heart before sentencing him.

My brother means the world to our family. He is our protector. He is a person that always provides food to those in need. Who looks after his nieces and nephews and doesn't miss a parent teacher conference of his kids. He is not judgmental or malicious. My mother needs my brother to help heal from her mental health. We are all very worried because he is incarcerated.

I am aware that my brother has made bad decisions and we do not excuse them. But we know that he is also a victim of his environment. When kids have a difficult childhood they grow up to be traumatized adults. If my brother is released we promise to find him professional help to heal from the trauma he has experienced.

Thank you,

Jesica Feliz